Appeal No. 2013-1465
(Cancellation No. 92025859)

# United States Court of Appeals

*for the*

# Federal Circuit

EMPRESA CUBANA DEL TABACO,
(doing business as Cubatabaco),

*Appellant,*

– v. –

GENERAL CIGAR CO., INC.,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
TRADEMARK TRIAL AND APPEAL BOARD

## BRIEF FOR APPELLANT EMPRESA CUBANA DEL TABACO

DAVID B. GOLDSTEIN
MICHAEL KRINSKY
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.
45 Broadway, Suite 1700
New York, New York 10006
(212) 254-1111

*Attorneys for Appellant
Empresa Cubana Del Tabaco*

September 20, 2013

**Form 9**

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

_____

_____

_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____


_____          _____
             Date                                      Signature of counsel

                                       _____
                                               Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES .................................................. 1

JURISDICTIONAL STATEMENT ....................................................... 3

ISSUES PRESENTED ........................................................................ 3

STATEMENT OF THE CASE AND THE FACTS ................................. 4

    A.    Summary of the Federal Action and Proceedings Below .................... 4

    B.    The Federal Action and Proceedings in the USPTO and
          Before the Board ....................................................................... 9

SUMMARY OF ARGUMENT ........................................................... 18

ARGUMENT .................................................................................. 20

I.    THE BOARD ERRED IN HOLDING CUBATABACO LACKED
      STANDING ............................................................................ 20

    A.    The Standard of Review Is *De Novo* ................................ 20

    B.    Standing Requires Only a Real Interest in the Proceeding and
          a Reasonable Belief in Damage .......................................... 21

    C.    Cubatabaco Has a "Real Interest" in Cancelling the Blocking
          Registrations and a Reasonable Basis for Belief in Damage
          from the Registrations ........................................................ 22

    D.    Cubatabaco Has Standing Because General Cigar's
          Registrations Are Blocking Cubatabaco's Application .................... 27

    E.    The Board's "Standing" Holding Is Dependent on a
          Preclusion Analysis that the Board Admittedly Never
          Conducted ........................................................................ 33

    F.    Under *Lipton*, Cubatabaco Has a Sufficient "Legitimate
          Commercial Interest"; It Does Not Need a Proprietary Interest
          in the Mark ...................................................................... 36

    G.    The Board Misstated the Second Circuit's Holding, and
          Relied on Statements Irrelevant to Cubatabaco's Standing ............... 39

II.   THERE IS NO ISSUE PRECLUSION ...........................................................42

    A.   There Is No Preclusion When, as Here, There Is Any
        Uncertainty Whether All Elements of Preclusion Are
        Established................................................................................43

    B.   Issue Preclusion Does Not Bar Cancellation of the Second
        Registration ...........................................................................45

        1.   Cancellation Pursuant to § 2(d) of the Act ................45

        2.   Cancellation Based on General Cigar's Copying of
            Cubatabaco's COHIBA Mark to Exploit Its Renown in
            the U.S...................................................................49

        3.   Cancellation Based on Article 6*bis* of the Paris
            Convention ...........................................................52

        4.   Cancellation Pursuant to Article 8 of the IAC........................53

    C.   Issue Preclusion Does Not Bar Cancellation of the First
        Registration ...........................................................................54

        1.   Cancellation of the First Registration on Grounds of
            Abandonment ........................................................55

        2.   Cancellation of the First Registration on Grounds of
            Fraud and Improper Motive ....................................55

III.  GENERAL CIGAR LIMITED ITS CLAIM PRECLUSION
    DEFENSE TO NEW CLAIMS; THE PARTIES AGREE THERE
    ARE NONE ....................................................................................57

CONCLUSION .........................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc.*,
    567 F. Supp. 66 (S.D. Tex. 1983)................................................................58

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008)..........................................................................46

*Am. Hygienic Labs., Inc. v. Tiffany & Co*,
    228 U.S.P.Q. 855 (TTAB 1986)....................................................................26

*Award Pictures, LLC v. Renaissance Pictures Ltd.*,
    2013 WL 2365034 (TTAB Feb. 5, 2013).....................................................38

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
    80 F.3d 1553 (Fed. Cir. 1996) .....................................................................58

*Books on Tape, Inc. v. Booktape Corp.*,
    836 F.2d 519 (Fed. Cir. 1987) .....................................................................37

*British-Am. Tobacco Co. v. Phillip Morris, Inc.*,
    2001 WL 256142 (TTAB Feb. 27, 2001), *on reconsid. from*,
    55 U.S.P.Q.2d 1585 (TTAB 2000)..........................................................53, 54

*Burella v. City of Philadelphia*,
    501 F.3d 134 (3d Cir. 2007) ........................................................................42

*Chemical New York Corp. v. Conmar Form Systems, Inc.*,
    1 U.S.P.Q.2d 1139 (TTAB 1986)......................................................36, 37, 38

*Coach Services, Inc. v. Triumph Learning LLC*,
    668 F.3d 1356 (Fed. Cir. 2012) ..............................................20, 21, 22, 28

*Corporacion Habanos, S.A v. Guantanamera Cigars Co.*,
    86 U.S.P.Q.2d 1473 (TTAB 2008), *remanded on other grounds*,
    729 F. Supp.2d 246 (D.D.C. 2010), *opp. sustained*, 102 U.S.P.Q.2d
    1085 (TTAB 2012) .......................................................................................30

*Corporacion Habanos, S.A. v. Anncas, Inc.*,
    88 U.S.P.Q.2d 1785 (TTAB 2008)...............................................................30

*Corporacion Habanos, S.A. v. Anncas, Inc.*,
    Opp. No. 91165519 (TTAB Nov. 29, 2006) ...............................................25

iii

*Corporation Cimex, S.A. v. DM Enter. & Distrib., Inc.*,
2008 WL 5078739 (TTAB Nov. 17, 2008)............................................30, 53

*Costello v. United States*,
365 U.S. 265 (1961)..........................................................................59

*Coup v. Vornado*,
9 U.S.P.Q.2d 1824 (TTAB 1998).........................................................31

*Delta-X Corp. v. Baker Hughes Production Tools, Inc.*,
984 F.2d 410 (Fed. Cir. 1993) ............................................................42

*Diaz v. Servicios de Franquicia Pardo's S.A.C.*,
83 U.S.P.Q.2d 1320 (TTAB 2007)........................................................53

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa I)*
213 F. Supp.2d 247 (S.D.N.Y. 2002) ..........................................2, 10, 11, 55

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa II)*
2002 WL 31251005 (S.D.N.Y. Oct. 2, 2002)..................................................2

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa III)*
70 U.S.P.Q.2d 1650 (S.D.N.Y. 2004) ..................................................*passim*

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa IV)*
2004 WL 925647 (S.D.N.Y. April 30, 2004) ......................................2, 5, 12

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa V)*
399 F.3d 462 (2d Cir. 2005), *cert denied*, 547 U.S. 1205 (2006) ..........*passim*

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa VI)*
478 F. Supp.2d 513 (S.D.N.Y. 2007) ..................................................*passim*

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa VII)*
541 F.3d 476 (2d Cir. 2008) ..............................................................*passim*

*Empresa Cubana del Tabaco v.*
*Culbro Corp. and General Cigar Co., Inc., (Empresa VIII)*
587 F. Supp.2d 622 (S.D.N.Y. 2008) ..................................................2, 16

*Empresa Cubana del Tabaco v.*
  *Culbro Corp. and General Cigar Co., Inc.,* (*Empresa IX*)
  2009 WL 4790410 (S.D.N.Y. Dec. 14, 2009)................................................2

*Empresa Cubana del Tabaco v.*
  *Culbro Corp. and General Cigar Co., Inc.,* (*Empresa X*)
  385 Fed. Appx. 29 (2d Cir. 2010) ...........................................................1, 16

*Estate of Biro v. Bic Corp.,*
  18 U.S.P.Q.2d 1382 (TTAB 1991)....................................................21, 22, 35

*First Niagara Ins. Brokers, Inc. v. First Niagara Financial Group, Inc.,*
  476 F.3d 867 (Fed. Cir. 2007) .........................................................20, 23, 46

*Gal v. Israel Military Indus. Of the Ministry of Def. Of the State of Israel,*
  230 U.S.P.Q. 669 (TTAB 1986), *aff'd,* 824 F.2d 980
  (Fed. Cir. 1987)......................................................................................*passim*

*General Cigar Co., Inc. v. G.D.M., Inc.,*
  988 F. Supp. 647 (S.D.N.Y. 1997) ...............................................................56

*Great Seats Ltd. v. Great Seats, Inc.,*
  84 U.S.P.Q.2d 1235 (TTAB 2007)................................................................29

*Hesen-Minten v. Petersen,*
  2013 WL 3188908 (TTAB Feb. 26, 2013)....................................................29

*In re Rath,*
  402 F.3d 1207 (Fed. Cir. 2005) ....................................................................52

*Int'l Order of Job's Daughters v. Lindeburg & Co.,*
  727 F.2d 1087 (Fed. Cir. 1984) ....................................................................22

*Jet, Inc. v. Sewage Aeration Systems,*
  223 F.3d 1360 (Fed. Cir. 2000) .......................................................43, 47, 59

*Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.,*
  823 F.2d 490 (Fed. Cir. 1987) .........................................................21, 35, 37

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,*
  719 F.3d 1367 (Fed. Cir. 2013) ....................................................................43

*Life Zone Inc. v. Middleman Group Inc.,*
  87 U.S.P.Q.2d 1953 (TTAB 2008)................................................................29

*Lipton Indus., Inc. v. Ralston Purina Co.,*
  670 F.2d 1024 (C.C.P.A. 1982)..............................................................*passim*

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*,
    424 F.3d 1229 (Fed. Cir. 2005) ............................................................*passim*

*Murthy v. Vilsack*,
    609 F.3d 460 (D.C. Cir. 2010)................................................................59

*N.J. Inst. of Tech. v. Medjet, Inc.*,
    47 Fed. Appx. 921 (Fed. Cir. 2002) ......................................................44, 59

*Ovation LLC v. Ovation, Inc.*,
    2013 WL 4635994 (TTAB Aug. 14, 2013)................................................29

*Person's Co., Ltd v. Christman*,
    9 U.S.P.Q.2d 1477 (TTAB 1988), *aff'd*, 900 F.2d 1565
    (Fed. Cir. 1990)........................................................................49, 50, 51, 52

*RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003) ..................................................................43

*Ritchie v. Simpson*,
    170 F.3d 1092 (Fed. Cir. 1999) ............................................................21, 37

*Saddlesprings, Inc. v. Mad Croc Brands, Inc.*,
    104 U.S.P.Q.2d 1948 (TTAB 2012)............................................................29

*Shock Doctor, Inc. v. Bite Tech, Inc.*,
    2013 WL 3188914 (TTAB April 9, 2013) ...................................................29

*ShutEmDown Sports, Inc. v. Lacy*,
    102 U.S.P.Q.2d 1036 (TTAB 2012)............................................................29

*Soro v. Citigroup*,
    287 Fed. Appx. 57 (11th Cir. 2008) ...........................................................38

*Soro v. Citigroup, Inc.*,
    2006 WL 1258955 (TTAB Apr. 25, 2006)..................................................38

*Stephen Slesinger, Inc. v. Disney Enters., Inc.*,
    98 U.S.P.Q.2d 1890 (TTAB 2011)...........................................32, 33, 34, 35

*The All England Lawn Tennis Club (Wimbledon), Ltd. v. Creations
    Aromatiques Inc.*,
    220 U.S.P.Q. 1069 (TTAB 1983).......................................................... 46-47

*Tri-Star Marketing, LLC v. Nino Fraco Spumanti SRL*,
    84 U.S.P.Q.2d 1912 (TTAB 2007)..............................................................29

*U.S. Philips Corp. v. Sears Roebuck & Co.*,
   55 F.3d 592 (Fed. Cir. 1995) ..........................................................................51

## Statutes & Other Authorities:

15 U.S.C. § 1052 ..........................................................................3

15 U.S.C. § 1052(d) ..........................................................................*passim*

15 U.S.C. § 1064 ..........................................................................3, 21

15 U.S.C. § 1067 ..........................................................................3

15 U.S.C. § 1067(a) ..........................................................................53

15 U.S.C. § 1071(a)(1) ..........................................................................3

15 U.S.C. § 1071(a)(2) ..........................................................................3

15 U.S.C. § 1114 ..........................................................................25

15 U.S.C. § 1115(a) ..........................................................................24

15 U.S.C. § 1119 ..........................................................................10

15 U.S.C. § 1125(a) ..........................................................................10, 11, 47, 48

15 U.S.C. § 1126(b) ..........................................................................11

15 U.S.C. § 1126(e) ..........................................................................*passim*

15 U.S.C. § 1126(h) ..........................................................................11, 54, 57

50 U.S.C. App. § 5(b)(4) ..........................................................................46

31 C.F.R. Part 515 ..........................................................................5

31 C.F.R. § 515.201(b) ..........................................................................12

31 C.F.R. § 515.206(1) ..........................................................................46

31 C.F.R. § 515.527 ..........................................................................*passim*

31 C.F.R. § 515.527(a)(1) ..........................................................................6

31 C.F.R. § 515.545 ..........................................................................46

37 C.F.R. § 2.145(d) ..........................................................................3

Fed. R. Civ. Proc. 41(a) ..........................................................................59

Fed. Cir. R. 47.5 .................................................................................1

TMEP § 1207.03 ...............................................................................24

TBMP § 309.03(b) ............................................................................29

18 Charles Alan Wright & Arthur R. Miller, *Federal Practice And Procedure, Juris* § 4412 (2d ed. 2013) .........................................58

General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907............................................11, 26, 53, 54

L. Altman & M. Pollack, *Callman on Unfair Competition, Trademarks & Monopolies*, § 26.81 (4th ed. 2013)............................................29

Paris Convention for Protection of Industrial Property, 21 U.S.T. 1629, Article 6*bis*....................................................................11, 48, 52

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, Appellant Empresa Cubana del Tabaco, d.b.a. Cubatabaco, herewith identifies the following related case, *Empresa Cubana del Tabaco* v. *Culbro Corp. and General Cigar Co., Inc.*, No. 97 Civ. 8399 (RWS) (S.D.N.Y.), which included three opinions issued by the United States Court of Appeals for the Second Circuit, and several opinions, orders and judgments of the United States District Court for the Southern District of New York (the "Federal Action"). These Second Circuit and District Court decisions were filed in the proceedings in the Trademark Trial and Appeal Board (the "Board" or "TTAB") (Dkt. 63), and are included in the Joint Appendix, A82-237.

1. Nos. 04-2527-cv(L), 04-3005-cv (XAP). Decided Feb. 24, 2005. (Cabranes, Straub, Wesley, Circuit Judges. 399 F.3d 462 (2d Cir. 2005) (A173-91) (*Empresa V*)[1], *cert denied*, 547 U.S. 1205 (2006) (A197). The Second Circuit Mandate was issued on February 8, 2006 (A193).

2. No. 07-1248-cv. Decided Sept. 4, 2008. (Raggi, Wesley, Livingston, Circuit Judges). 541 F.3d 476 (2d Cir. 2008) (A208-10) (*Empresa VII*).

3. No. 08-5878-cv. Decided July 14, 2010. (Raggi, Lynch, Chin, Circuit Judges). 385 Fed. Appx. 29 (2d Cir. 2010) (A235-37) (*Empresa X*).

---

[1] The parties used the designations *Empresa I* through *Empresa X* in the proceedings below to identify the decisions in the Federal Action, and generally used the "*Empresa __*" abbreviation in briefing in the Federal Action.

The District Court issued the following opinions, orders and judgments in the Federal Action:

1.    213 F. Supp.2d 247 (S.D.N.Y. 2002) (A86-117) (*Empresa I*).

2.    2002 WL 31251005 (S.D.N.Y. Oct. 2, 2002) (A119-24) (*Empresa II*).

3.    70 U.S.P.Q.2d 1650 (S.D.N.Y. 2004) (A126-167) (*Empresa III*).

4.    2004 WL 925647 (S.D.N.Y. April 30, 2004) (A169-71) (*Empresa IV*).

5.    Order (S.D.N.Y. May 15, 2006) (A195).

6.    478 F. Supp.2d 513 (S.D.N.Y. 2007) (A199-206) (*Empresa VI*).

7.    587 F. Supp.2d 622 (S.D.N.Y. 2008) (A212-21) (*Empresa VIII*);

8.    2009 WL 4790410 (S.D.N.Y. Dec. 14, 2009) (A223-25) (*Empresa IX*).

9.    Order and Judgment (S.D.N.Y. Jan. 12, 2010) (A227-33).

## JURISDICTIONAL STATEMENT

1.      The TTAB had subject matter jurisdiction over the cancellation proceeding, pursuant to sections 2, 14, 17 of the Trademark Act (the "Act"), 15 U.S.C. §§ 1052, 1064, 1067.

2.      This Court has jurisdiction over this appeal pursuant to 15 U.S.C. § 1071(a)(1), because the decision appealed from is a final judgment of the Board, which disposes of all parties' claims.  A1-17, 2013 WL 3168090 (TTAB March 14, 2013).

3.      This appeal is timely under 15 U.S.C. § 1071(a)(2), and 37 C.F.R. § 2.145(d), because the Board's decision was issued on March 14, 2013, A1, and the appeal was filed on May 9, 2013.

## ISSUES PRESENTED

1.      Did the Board err in holding, directly contrary to the holding of this Court's predecessor in *Lipton Indus., Inc. v. Ralston Purina Co*., 670 F.2d 1024, 1029 (C.C.P.A. 1982), that Cubatabaco lacked standing, although General Cigar's COHIBA registrations have been cited against and are blocking Cubatabaco's COHIBA application, and when Cubatabaco has additional "real interests" in the mark?

2.      Is Cubatabaco's Petition barred by issue or claim preclusion (questions the Board did not address)?

## STATEMENT OF THE CASE AND THE FACTS

This appeal of the Board's decision that Cubatabaco lacks standing to maintain this cancellation petition arises in a long-standing dispute resulting from General Cigar's appropriation and exploitation in the U.S. of Cuba's most famous and prestigious cigar mark, COHIBA, widely hailed as the world's finest cigar, in the context of the U.S. embargo on, *inter alia*, goods from Cuba. *Empresa III*, 70 U.S.P.Q.2d 1650, 1658-60 (S.D.N.Y. March 26, 2004).

### A. Summary of the Federal Action and Proceedings Below

In January 1997, Cubatabaco filed an application in the USPTO to register COHIBA for cigars and related goods, and a petition to cancel General Cigar's two registrations for COHIBA for "cigars" (Reg. No. 1147309 ("First Registration"); Reg. No. 1898273 ("Second Registration," together, the "Registrations")), which the PTO has cited against Cubatabaco's application. In November 1997, Cubatabaco commenced the Federal Action to enjoin General Cigar's use of the mark and to cancel the Registrations. After a trial, the court found, including based on General Cigar's documents, that the Cuban COHIBA was renowned in the U.S. prior to General Cigar's late 1992 use of the mark (after a long period of abandonment); General Cigar had intentionally copied the mark to exploit the fame of the Cuban COHIBA; Cubatabaco acquired the mark under the common law well-known marks doctrine before General Cigar's post-abandonment use and

4

registration; and there was a likelihood of confusion between the COHIBA marks. *Empresa III*, *supra*. The District Court enjoined General Cigar's use of the mark, and cancelled its registrations. *Empresa IV*, 2004 WL 925647 (S.D.N.Y. April 30, 2004).

On appeal, the Second Circuit held: 1) the Cuban Assets Control Regulations ("CACR," 31 C.F.R. Part 515), prohibited Cubatabaco from acquiring trademark rights except through registration; hence, it could not acquire the COHIBA mark through the well-known marks doctrine; and 2) the CACR's "limitation on judicial authority" prohibited the District Court's injunction and cancellation orders as unlicensed transfers of property, but otherwise did not address the merits of Cubatabaco's claims. *Empresa V*, 399 F.3d 462, 476-77 (2d Cir. 2005).

General Cigar then moved in the District Court for relief not previously requested: an order dismissing the pending cancellation petition and directing the PTO to deny Cubatabaco's pending COHIBA application. That court denied the motion, holding that "the Court of Appeals only had before it the question of whether *this Court's* cancellation and injunction orders constituted a transaction that violated the CACR, rather than the question of whether a cancellation order by the *TTAB* would also violate the embargo," and "the Court of Appeals did not address the registrability of the COHIBA mark by Cubatabaco; rather, it held that

Cubatabaco could not acquire the mark through the famous marks doctrine" under the embargo. *Empresa VI*, 478 F. Supp. 2d 513, 520-21 (S.D.N.Y. 2007) (emphasis added). Thus, "[i]t is appropriate for Cubatabaco to argue the issue to the TTAB" of the registrability of its COHIBA mark, including cancellation of the Registrations "as part of the [licensed] process of registering [Cubatabaco's] COHIBA." *Id*. at 521.

The District Court explained, "By general license, 31 C.F.R. § 515.527, the CACR authorizes Cuban nationals to obtain *TTAB* orders cancelling third-party registrations." *Id.* (emphasis added). In contrast, "Section 515.527 and the 1996 OFAC ruling do not expressly reference district court orders of cancellation …but only TTAB cancellation orders." *Id.*[2] Thus, "*whether action by the … TTAB is barred by the Embargo has not been resolved*" by the Federal Action. *Id*. at 520 (emphasis added). The court further held, "the issues raised by Cubatabaco's application to register COHIBA are different from those raised in this federal court

---

[2]  31 C.F.R. § 515.527(a)(1) provides by general license:

> Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

In 1996, OFAC ruled that § 515.527 licenses Cuban nationals to seek to cancel in the TTAB "the prior registration of a trademark related to its efforts to register a trademark," and to oppose applications in similar situations. A483. The Board has repeatedly cited this OFAC ruling in holding that Cuban parties have standing to challenge blocking applications and registrations. *See* Point I.C, *infra.*

action.  Again, … § 515.527, specifically allows Cuban nationals to acquire

trademarks via applications to register in the PTO." *Id.* at 522.  Therefore, the

court held, the Board, not the federal courts, should determine the preclusive effect

of the Second Circuit's opinion on Cubatabaco's cancellation petition. *See id*. at

522; *see also id*. at 520 ("General Cigar … is asserting an estoppel theory that is

properly before the PTO/TTAB rather than this Court.").

The Second Circuit affirmed. *Empresa VII*, 541 F.3d 476, 479 (2d Cir.

2008) ("no reason why it was an abuse of discretion for the district court simply to

tell General Cigar to raise its estoppel claim before the PTO and let the agency

decide, subject to review by the Federal Circuit, what preclusive effect should be

given to our decision in *Empresa V, if any*") (emphasis added).

After this proceeding resumed, Cubatabaco filed an Amended Petition to

cancel the Registrations.  A21-53.  If successful, Cubatabaco's application would

proceed in the PTO on the basis of its Cuban registration, as authorized by CACR

§ 515.527 and § 44(e) of the Act.

General Cigar filed an Answer, A54-80, and then moved for summary

judgment primarily on the grounds of issue preclusion, with a brief argument on

standing.  A238-57.  The Board granted the motion solely "on the basis of lack of

standing."  A16.  The Board expressly did not address whether Cubatabaco's

"claims are precluded by the application of the doctrines of *res judicata* and

collateral estoppel."  A16.

The Board's standing holding was seriously flawed in several ways, addressed in Point I, *supra*.  At bottom and without explanation, the Board apparently believed that Cubatabaco simply could not achieve anything by this proceeding, even if the Registrations were cancelled.  However, Cubatabaco's belief that the Registrations are damaging it is plainly reasonable, as they are not only blocking its application, but also its realistic pursuit of judicial relief following registration.  As shown, Point I.C, *infra*, the Board's decision usurps the federal courts' authority by, in effect, predicting that even if the Registrations are cancelled and Cubatabaco obtains a registration, Cubatabaco can obtain no judicial remedy, despite the novel issues presented.  As the United States has explained, CACR "§ 515.527 plainly authorizes Cuban entities including Cubatabaco to *obtain trademark rights* by means of a valid registration," A571 n.8 (emphasis added), which is necessary to achieve the foreign policy goal of securing reciprocal protection for U.S. trademarks in Cuba.  *See* A483.  With a registration, Cubatabaco, *inter alia*, could seek to enjoin General Cigar's use of the mark.  No court has ever addressed the respective rights of parties in the resulting situation, in which: (a) Cubatabaco owns the registration, but the CACR prevents use of the mark; (b) it is U.S. foreign policy to provide trademark protection to Cuban parties through registration; (c) Cubatabaco cancelled General Cigar's registrations; and

(d) multiple grounds support finding Cubatabaco's rights to be superior to General Cigar's.

As to the Board's expressed rationale, the decision directly contradicts this Court's clear holdings that: a petitioner has standing, without more, when its pending application is blocked by the challenged registration, repeatedly followed by the Board *without exception;* a party's interest in obtaining a registration is a legitimate commercial interest in the mark, and standing does not require a property right in the mark.  Rather than follow this Court's precedents, the Board relied on inapposite Board decisions in which the parties lacked a pending blocked application, and where the standing determinations explicitly depended upon the Board's *prior* holdings of *issue preclusion*, admittedly not addressed here.

### B.  The Federal Action and Proceedings in the USPTO and Before the Board

1.      On January 15, 1997, Cubatabaco filed an application (No. 75226002) to register the word mark COHIBA in IC 34 for "cigars" and related goods pursuant to section 44(e) of the Act, 15 U.S.C. § 1126(e), based on its ownership of the Cuban registration for COHIBA in the same class for the same goods. A291, 296-300.  That day, Cubatabaco also filed a petition in the TTAB to cancel the Registrations, A18-20, which the PTO cited as a bar to Cubatabaco's application under § 2(d), 15 U.S.C. § 1052(d).  A307-314, A376.

2.      General Cigar then launched a COHIBA-branded cigar on a national

scale, and Cubatabaco filed the Federal Action on November 12, 1997, seeking an injunction against General Cigar's use of the COHIBA mark pursuant, *inter alia*, to section 43(a), 15 U.S.C. § 1125(a), and cancellation of the Registrations pursuant to 15 U.S.C. § 1119. A486-502. The TTAB proceeding was suspended, pending the outcome of the Federal Action. A20 (Dkt 15). Proceedings on Cubatabaco's COHIBA application remain suspended. A291-92.

3.      General Cigar filed an Answer and Counterclaim seeking a declaratory judgment that it had the right to the use and registration of the COHIBA mark in the U.S., A503-18; the counterclaim was later dismissed. *See Empresa VI*, 478 F. Supp. 2d at 519. General Cigar did *not* counterclaim for dismissal of Cubatabaco's TTAB Petition or denial of its application, and, as noted, did not request that relief until *after* the Second Circuit's first decision. *See id*. at 520-22, discussed *supra*. General Cigar never sought an injunction against Cutabaco's use of the mark in the Federal Action, and none was granted.

4.      On June 26, 2002, the District Court granted partial summary judgment to both parties. *Empresa I,* 213 F. Supp.2d 247 (S.D.N.Y. 2002). The court cancelled the First Registration on the ground that General Cigar had abandoned the mark during over five years of non-use from 1987 to late 1992. *Id.* at 267-71. It expressly did not address Cubatabaco's claims that General Cigar obtained the First Registration through fraud on the PTO and in bad faith, *id.* at

266, n.30, as General Cigar acknowledged below (A247 n.3).

The court also dismissed Cubatabaco's claims under Articles 7 and 8 of the General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907 ("IAC"); and Article *6bis* of the Paris Convention for Protection of Industrial Property, 21 U.S.T. 1629 ("Paris Convention"), on the basis of Second Circuit precedent, under which Cubatabaco could only assert its treaty claims through section 44(b), (h) of the Act, 15 U.S.C. § 1126(b), (h).  The court found that section 44 did not incorporate Cubatabaco's asserted treaty rights.  213 F. Supp.2d at 279-84.

5.    On March 26, 2004, after a bench trial, the District Court held General Cigar liable for trademark infringement under section 43(a), based upon its holdings that:  (a) under the well-known marks doctrine, Cubatabaco – through the considerable renown of its COHIBA mark in the U.S. before General Cigar commenced use of the mark or applied to register it in late 1992 – had acquired ownership of the mark in the U.S.; and (b) there was a likelihood of confusion between the COHIBA marks.  *Empresa III*, 70 U.S.P.Q.2d at 1674-92.  The court relied on extensive evidence of the Cuban COHIBA's extraordinary fame and reputation prior to General Cigar's use, including General Cigar's own documents and testimony, in which it admitted that its strategy was "to exploit the popularity, familiarity, brand recognition and overall success of the Cuban Cohiba,"

"capitalize on the success of the Cuban brand," and "[e]xploit the Cohiba name,

with its reputation as one of the world's finest cigars, to build a brand image for the

U.S. product." *Id*. at 1659-61.  The court permanently enjoined General Cigar

from using the COHIBA mark and ordered its Registrations cancelled.  *Empresa

IV*.

6.    On appeal, General Cigar argued for the first time that the CACR

deprived the federal courts of the authority to grant to Cubatabaco the injunctive

and cancellation relief ordered by the District Court.  31 C.F.R. § 515.201(b)

prohibits "transfer" of property to Cuban nationals or in which Cuban nationals

otherwise have an interest, *unless* the transfer is authorized by general license in

the CACR or by a specific license issued by OFAC pursuant to the CACR.  The

Second Circuit reversed the District Court *exclusively* and expressly on the ground

that no general or specific license under the CACR authorized *the federal courts* to

grant the relief ordered by the District Court, which was the only issue before it,

not the authority of the TTAB to cancel registrations.  *See Empresa VI*, 478 F.

Supp.2d at 521.

> Invoking Sections 43(a), 44(b), and 44(h) of the Lanham Act and
> treaty duties owed by a state party to the Paris Convention,
> Cubatabaco seeks to exclude General Cigar from commercial use of
> the COHIBA mark in the United States. There is no doubt that
> granting this relief to Cubatabaco would entail a transfer from General
> Cigar to Cubatabaco of a "right, remedy, power, privilege, or interest
> with respect to [the COHIBA mark]." 31 C.F.R. § 515.310.  As it is
> exactly this brand of property right transfer that the embargo

> prohibits, we cannot sanction a grant of injunctive remedy to Cubatabaco in the form of the right, privilege, and power to exclude General Cigar from using its duly registered mark. As described below, *this limitation on judicial authority* applies equally to Cubatabaco's Lanham Act and Paris Convention claims.

*Empresa V*, 399 F.3d at 476-77 (emphasis added).

The Court never suggested, let alone held, that the registrations could not be cancelled pursuant to a license under the CACR, and never addressed whether *the Board* could cancel the registrations pursuant to the general license of CACR § 515.527, which imposes no limitation on the Board's authority to cancel registrations. *See Empresa VI*, 478 F. Supp.2d at 521.

*First*, the Second Circuit held that the CACR barred Cuban nationals from acquiring *ownership* of a trademark in the U.S. through the well-known marks doctrine, or otherwise by operation of law, because neither a general nor a specific license authorized such acquisition through this means. 399 F.2d at 472-76. The Court, however, recognized that a Cuban national *could* acquire trademark rights through registration, as authorized by CACR § 515.527, *id*. at 475, as the United States explained in its Second Circuit *amicus* brief, A571 n.8, and as General Cigar acknowledged, A622 (asserting "registration is the only method authorized by the [CACR]" by which "Cubatabaco could acquire U.S. trademark rights")

*Second*, the Second Circuit held that the CACR precluded Cubatabaco's alternative argument for affirmance even if the CACR prohibited its acquisition of

13

the COHIBA mark through the well-known marks doctrine:

> We also reject Cubatabaco's argument that, even if the embargo bars its acquisition of the mark, it nonetheless is entitled, based on the 'fame' of its mark, to obtain *cancellation* of General Cigar's mark and an injunction barring General Cigar from using the mark in the United States *because to grant this relief would entail a transfer of property rights in the COHIBA mark to Cubatabaco in violation of the embargo*.

399 F.3d at 471 (emphasis added).  This is the *only* statement in the Court's

opinion why it reversed the District Court's cancellation order.  And as that

opinion makes clear, a transfer of property rights *does not* violate the embargo *if it*

*is licensed*.

Immediately after identifying Cubatabaco's alternative cancellation and

injunction argument, the Circuit summarized its reason for reversal of the

injunction, and concluded that the "limitation on *judicial* authority" imposed by the

CACR's prohibition against the *unlicensed* transfer of property barred the

injunction.  *Id.* at 476-77 (emphasis added).  The holding that both cancellation and

injunction would "entail a transfer of property rights in the COHIBA mark to

Cubatabaco in violation of the embargo," *id*. at 471, necessarily rests on the same

holding as to the CACR's "limitation on *judicial* authority," *id*. at 477, as the Court

offered no other explanation for its cancellation holding.

As a result of its CACR "limitation on judicial authority" holding, the

Second Circuit expressly did not address whether General Cigar had abandoned the

First Registration, or other grounds to cancel the Registrations.  The Court then

14

"remanded for entry of an order dismissing all remaining claims," *id*. at 486, which included "any counterclaims by General Cigar." *Empresa VI*, 478 F. Supp.2d at 519.

7.    On May 15, 2006, the District Court "ORDERED that all remaining claims in the above-entitled action are dismissed." A195.  As a result, no court ever entered judgment on the counterclaim.

8.    The Supreme Court denied Cubatabaco's petition for a writ of *certiorari* on June 15, 2006.  A197.

9.    As discussed, *supra*, General Cigar then moved in the District Court for an order:  (1) directing the Board to dismiss Cubatabaco's cancellation petition, and (2) directing the PTO to deny Cubatabaco's COHIBA application, which the District Court denied, and the Second Circuit affirmed.  *See Empresa VI, supra, Empresa VII, supra*.  In that appeal, General Cigar prominently argued, including in its Headings, that "**Cubatabaco Lacks Standing"** *in the TTAB* to seek cancellation of the Registrations "because *Empresa V* conclusively determined that General Cigar, not Cubatabaco, is the sole and exclusive owner of the COHIBA registration," and, therefore, Cubatabaco is "lacking any legal interest in the United States COHIBA mark," A544-46 (bold original); *see* A532-33 ("*Empresa V* forecloses Cubatabaco from establishing … standing … in the TTAB").  The Second Circuit's conclusion that "[w]e have considered General Cigar's remaining

arguments and conclude that they are without merit," necessarily encompassed this TTAB standing argument. *Empresa VII*, 541 F.3d at 479.[3]

10.   On June 23, 2011, the Board granted Cubatabaco's requests to resume proceedings and to file an amended petition. Dkt. 60. The Amended Petition, A21-53, seeks cancellation of the Second Registration on several grounds recognized by this Court and the Board that do not require prior ownership of the mark; which were established by evidence in the Federal Action; and which the Second Circuit did not address on the merits, including that Cubatabaco "previously used in the United States," § 2(d), the mark through advertising and extensive promotion in the U.S. before General Cigar's use or application in 1992; the Cuban COHIBA's renown in the U.S.; and that General Cigar registered the mark to exploit its renown and reputation in the U.S. The Amended Petition also seeks to cancel the First Registration on grounds of abandonment and for fraud on the PTO and bad faith conduct, and to cancel both Registrations under the IAC.

Upon cancellation of the Registrations, the PTO's consideration of

---

[3] Following an intervening New York Court of Appeals decision, Cubatabaco moved the District Court for relief from dismissal of its state law unfair competition claim. The court granted Cubatabaco's motion, reaffirming its 2004 findings that General Cigar had "intentionally copied" the Cuban COHIBA mark in 1992 in an "attempt[] to exploit the reputation of the Cuban COHIBA." *Empresa VIII*, 587 F. Supp.2d 622, 631 (S.D.N.Y. 2008) (internal quotation omitted). The Second Circuit reversed, holding that the state court decision did not justify reopening the nearly three-year old judgment. *Empresa X*, 385 Fed. Appx. 29 (2d Cir. 2010).

Cubatabaco's application would then proceed on the basis of its Cuban
registration, as authorized by 31 C.F.R. § 515.527 and § 44(e) of the Act.

11.    General Cigar filed an Answer, A54-80, and then moved for summary
judgment (Dkt. 64).  Most of its argument was devoted to *issue* preclusion, and to
the factual merits of Cubatabaco's previously un-addressed fraud and bad faith
claims directed to the First Registration.  A238-56, A280-89.  As to *claim*
preclusion, General Cigar argued only that *if* Cubatabaco raised *new* claims, claim
preclusion would bar them.  It did *not* argue that any claims raised in the Federal
Action were barred by claim preclusion, and it further argued that all of
Cubatabaco's claims were in fact raised in the Federal Action, A255-56, A289 (last
para.), which Cubatabaco did not dispute.

General Cigar gave extremely short shrift to its "standing" argument, already
rejected by the Second Circuit as "without merit," devoting less than two pages in
its main brief and barely a page in its Reply.  A243-44, A285-86.  Although
couched as "standing," General Cigar recognized that its standing argument in fact
depended upon the Board *first* finding issue preclusion, A242-43 (asserting no
standing, because Second Circuit's "determinations" were "necessary *and essential*
to [its] opinion and judgment … [and] are *therefore preclusive* in this action")
(emphasis added).  The Board, however, expressly did not address preclusion.
A16.

12.    On March 14, 2013, the Board granted General Cigar's motion for summary judgment solely on the basis of lack of standing.  A1-17.

## SUMMARY OF ARGUMENT

**I.**    This Court's predecessor held that, to establish standing, it is "sufficient that [petitioner] prove that it filed an application and that a rejection was made because of [respondent's] registration."  *Lipton Indus.*, 670 F.2d at 1029. The Board has repeatedly adhered to *Lipton*, including on behalf of Cuban parties, and has never before found a party lacks standing to challenge a blocking registration, as here.  Point I.D.

The Board ignored *Lipton*, instead relying on cases not involving a blocked application, and in which the Board expressly based its finding of no standing on a prior finding of issue preclusion, which went unaddressed here.  Point I.E.

The Board erroneously held that Cubatabaco lacked a "legitimate commercial interest" in the mark, directly contrary to *Lipton's* holding that a "desire for a registration" *is* "a legitimate commercial interest," *id*., and this Court's holdings that standing does not require a property interest in the challenged mark.  Point I.F.

Although unnecessary under *Lipton*, Cubatabaco has "real interests" beyond desiring a registration.  Upon cancelling the blocking Registrations and acquiring trademark rights *through registration*, the sole means authorized by the CACR,

Cubatabaco can challenge General Cigar's use. The Board lacks authority to deny Cubatabaco standing based on its prediction of how the federal courts would address novel issues presented by such action, with Cubatabaco holding rights based on its registration, and claiming superiority over General Cigar on the basis of, *inter alia*, treaty obligations, prior use (advertising and promotion), and General Cigar's intentional copying of Cubatabaco's mark. Point I.C.

The Board mistakenly treated the Second Circuit's *Empresa V* decision as "binding," without conducting the necessary preclusion analysis. *Empresa V,* including the statements cited by the Board, however, are neither binding nor relevant to standing, as they did not reach the merits of Cubatabaco's claims, or the Board's authority to cancel the Registrations under the general license of § 515.527. *Empresa VI*, 478 F. Supp. 2d at 520-22. Point I.G.

**II.** This Court may address issue preclusion in the first instance or remand to the Board. There is no issue preclusion because, *inter alia*, the Second Circuit only addressed the CACR's prohibitions on the *federal courts*, "rather than the question of whether a cancellation order by the *TTAB* would also violate the embargo," a "different" question, and, therefore, also did not decide any issues concerning the substantive merits of Cubatabaco's cancellation claims. *Empresa VI*, 478 F. Supp.2d at 520-22 (emphasis added). Thus, there is no identity of issues here with those decided in the Federal Action. Moreover, the issues raised here,

because not decided in the Federal Action, were not necessary to the Second Circuit's CACR-based judgment.

**III.** General Cigar expressly limited its *claim* preclusion defense to *new* grounds not raised in the Federal Action. The parties agree that the cancellation grounds here were raised in the Federal Action. Thus, no claim preclusion question is presented. In any event, there is no claim preclusion because the federal courts, but not the Board, lack authority under the CACR to cancel the Registrations, and the Circuit's judgment in *Empresa V* was not on the merits.

## ARGUMENT

## I.   THE BOARD ERRED IN HOLDING CUBATABACO LACKED STANDING

### A. The Standard of Review Is *De Novo*

This Court reviews the Board's grant of summary judgment and the Board's legal conclusions *de novo*. *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1234, (Fed. Cir. 2005); *First Niagara Ins. Brokers, Inc. v. First Niagara Financial Group, Inc.*, 476 F.3d 867, 870 (Fed. Cir. 2007). Likewise, no deference is due the Board's standing determination, as "[s]tanding is a question of law that this court reviews *de novo*." *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012).

**B. Standing Requires Only a Real Interest in the Proceeding and a Reasonable Belief in Damage**

In *Coach*, this Court recently reiterated the well-established liberal standing requirements for TTAB proceedings. "The 'case' and 'controversy' restrictions [of U.S.Const. Art. III] do not, however, apply to matters before administrative agencies. Instead, for an agency such as the PTO, standing is conferred by statute." *Id*. (citing *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999)). Section 14 of the Act confers standing upon "any person who believes that he is or will be damaged … by the registration of a mark…." 15 U.S.C. § 1064.[4] "The purpose of the standing requirement is 'to prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more than an intermeddler.'" *Coach*, 668 F.3d at 1376 (quoting *Lipton Indus.*, 670 F.2d at 1028–29); *see Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987) (challenger need "only … show a personal interest in the outcome of the case beyond that of the general public"); *Lipton Indus.*, 670 F.2d at 1029-30 ("public interest is served … in broadly interpreting the class of persons Congress intended to be allowed to institute cancellation proceedings"); *Estate of Biro v. Bic Corp.*, 18 U.S.P.Q.2d 1382, 1385-86 (TTAB 1991) (Federal Circuit decisions establish "low threshold for a plaintiff to go from being a mere

---

[4] *Coach* concerned an opposition proceeding under § 13 of the Act, but neither this Court nor the Board has indicated that standing requirements differ for cancellation or opposition proceedings, despite slight differences in statutory wording.

intermeddler to one with an interest in the proceeding").

This Court further explained:

> an opposer must satisfy two judicially-created standing requirements. *Ritchie*, 170 F.3d at 1095. Specifically, an opposer must show: (1) a "real interest" in the proceeding; and (2) a "reasonable basis" for believing that it would suffer damage if the mark is registered. *Id*. Under the "real interest" requirement, an opposer must have "a legitimate personal interest in the opposition." *Id*. With respect to the second inquiry, the opposer's belief of damage "must have a reasonable basis in fact." *Id*. at 1098 (citation and quotation omitted).

*Coach*, 668 F.3d at 1376. Standing does not require proof of actual injury or damage. *Mayer/Berkshire,* 424 F.3d at 1232; *Int'l Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1092 (Fed. Cir. 1984).

Once standing is established, a plaintiff may "'rely on any ground that negates [the] right to the registration[s],'" including grounds upon which it would otherwise not have standing. *Coach*, 668 F.3d at 1377 (expressly rejecting claim by claim standing analysis) (quoting *Biro,* 18 U.S.P.Q.2d at 1385-86).

## C. Cubatabaco Has a "Real Interest" in Cancelling the Blocking Registrations and a Reasonable Basis for Belief in Damage from the Registrations

The Board's conclusion that Cubatabaco lacked standing despite its blocked application, which establishes standing as a matter of law, and its statements that the Second Circuit decision is "binding," A14-15, without addressing preclusion, suggest that the Board, without so stating, accepted General Cigar's assertion that nothing in this proceeding could affect the parties' interests in the COHIBA mark.

Because such demonstrably incorrect view may underlie the Board's unprecedented and flawed standing holding, Cubatabaco addresses it first, before considering the Board's multiple errors in its express reasoning. Cubatabaco's belief that this proceeding may have real world consequences in altering the parties' rights and interests in the mark is plainly reasonable, as follows.

Had the Board acknowledged Cubatabaco's standing, it would have then addressed issue preclusion. If the Board agreed with Cubatabaco (in whole or in part), *see* Point II, *infra*, it would then have addressed the merits of Cubatabaco's non-precluded claims, but, unlike in the Federal Action, *without* the constraints of the CACR's limitation on unlicensed judicial authority to cancel registrations, given the license of CACR § 515.527. On the merits, the Board would likely agree with the District Court's findings (not addressed by the Second Circuit) that: a) General Cigar abandoned the First Registration; and b) the Cuban COHIBA had substantial renown in the U.S. before General Cigar adopted the mark after abandonment, resulting from Cubatabaco's "use" of the mark, § 2(d) (as distinct from "use in commerce") through sustained advertising and other publicity, which successfully caused the public to associate the mark with Cubatabaco, which provides grounds to cancel the Second Registration. *See* Point II.A, *infra; First Niagara,* 476 F.3d at 871.

Even if the Board ultimately held against Cubatabaco on preclusion or the

merits, those are different questions than whether Cubatabaco has *standing,* and whether Cubatabaco has standing is unrelated to the Board's ultimately decision on those matters.

If the Board agreed with the District Court's findings, under the Board's precedents and the general license of § 515.527, the Registrations likely would be cancelled.  If cancelled, the only obstacle to the PTO Examiner approving Cubatabaco's application would be removed, as the Examiner cannot consider another party's claimed prior use of an unregistered mark.  *See* TMEP § 1207.03; *Empresa V*, 399 F.3d at 479 (acknowledging, "It may be true that, as the government argues, 'Cubatabaco's foreign registrations give it the right to register its COHIBA mark [in the United States], absent General Cigar's registration.' *Amicus Curiae* Br. at 12.") (brackets added by Court).  Speculation that General Cigar might oppose registration, and further speculation as to such proceeding's outcome, cannot deprive Cubatabaco of standing *here* to try to remove the cited impediment to registration.

Once Cubatabaco acquired a registration, "matters" would no longer "stand" as they did when the Second Circuit issued its decision in 2005.  399 F.3d at 476. A registration creates a presumption of both "ownership" and "exclusive right to use the mark." 15 U.S.C. § 1115(a).  Moreover, as discussed, the United States has explained that "§ 515.527 plainly authorizes Cuban entities including Cubatabaco

to *obtain trademark rights"* through "registration."  A571 n.8 (emphasis added).

Indeed, to hold that a Cuban party obtains only a worthless piece of paper (a

USPTO registration certificate) would not only make a mockery of the authority of

CACR § 515.527, but would directly undermine the explicit U.S. policy of

"provid[ing] reciprocal protection for the intellectual property of Cuba and the

United States" through *registration*, and registration enforcement proceedings.

A483.  Consistent with this policy, the PTO routinely recognizes that the embargo

excuses Cuban nationals' compliance with the normal "use in commerce"

requirements for maintenance and renewal of registrations, and the Board has so

held.  *Corporacion Habanos, S.A. v. Anncas, Inc.*, Opp. No. 91165519, at 9-14

(TTAB Nov. 29, 2006).

Moreover, with a registration and pursuant to § 32 of the Act, 15 U.S.C. §

1114, and the favorable rulings in this (and any opposition) proceeding,

Cubatabaco could seek to enjoin General Cigar's use of the mark.  No court has

ever addressed the legal implications and respective rights of the parties in the

resulting situation, in which: (a) Cubatabaco owns the registration, but cannot use

the mark because of the CACR; (b) the foreign policy of the U.S. is to provide

trademark protection to Cuban parties through registration, despite the prohibitions

on use; (c) Cubatabaco cancelled General Cigar's registrations; and (d) multiple

grounds support finding Cubatabaco's rights to be superior to General Cigar's,

including that Cubatabaco used the mark through sustained advertising and promotion to establish renown *before* General Cigar's first use in commerce, General Cigar intentionally copied the mark to exploit that renown, and U.S. treaty obligations require that Cubatabaco be given priority under IAC, Article 7. Further, as the United States advised the Supreme Court, it has the authority to issue specific OFAC licenses to Cubatabaco as needed to vindicate U.S. treaty and foreign policy obligations, and noted Cubatabaco's application for such a license, A558 n.4, which remains pending. *Empresa VI*, 478 F. Supp.2d at 517.[5]

The Board is simply in no position – and has no jurisdiction or authority, *see Am. Hygienic Labs., Inc. v. Tiffany & Co*, 228 U.S.P.Q. 855, 857 (TTAB 1986) – to assume that Cubatabaco could not prevail in such an action, or to deny standing here based on a prediction of how the federal courts will rule on the effect of Cubatabaco's registration on General Cigar's rights in the mark, or to predict what steps the U.S. may take to protect its foreign policy interests and treaty obligations in such circumstance.

Similarly, if the CACR's restrictions on the sale of Cuban cigars in the U.S. were lifted, and Cubatabaco, the owner of the registration, commenced sales of

---

[5]  In any federal litigation, Cubatabaco will argue that its CACR-authorized registration entitles it to protection without need of a specific OFAC license, but that it could seek a license if needed to complement the rights obtained from registration.

COHIBA-marked cigars in the U.S., the Board cannot predict the outcome of an attempt by General Cigar to enjoin such use, including, for example, whether General Cigar's intentional exploitation of the Cuban COHIBA constitutes unclean hands barring equitable relief. In addition, with a registration, Cubatabaco would be able to challenge third party infringers of the COHIBA mark, and would have priority over any other potential claimants were General Cigar to abandon the mark.

Cubatabaco recognizes that the results in this sequence are uncertain, but that is precisely why Cubatabaco has a "real interest" in the outcome of this proceeding and a reasonable belief of damage by the blocking Registrations. Whether Cubatabaco ultimately prevails in this proceeding, whether General Cigar, without a registration, can block Cubatabaco's registration, and whether Cubatabaco, with a registration, can successfully challenge General Cigar's or others' use of the mark, and can use the mark upon lifting of the embargo, Cubatabaco has standing to pursue cancellation here.

### D. Cubatabaco Has Standing Because General Cigar's Registrations Are Blocking Cubatabaco's Application

This Court's predecessor has explicitly held that, for purposes of standing, an interest in registering a mark constitutes a "real interest," and the belief that the blocking registration is causing it "damage" by blocking that "real interest" is inherently "reasonable":

> We regard *the desire for a registration* with its attendant statutory advantages as a *legitimate commercial interest*. To establish a reasonable basis for a belief that one is damaged by the registration sought to be cancelled, a petition may assert … as here, *a rejection of an application* during prosecution. Thus, to have standing in this case, it would be *sufficient that appellee prove that it filed an application and that a rejection was made because of appellant's registration*.

*Lipton Indus.*, 670 F.2d at 1029 (emphasis added). In *Lipton*, the cancellation ground was abandonment, one of the grounds alleged here; as noted, once standing is "established, petitioner is entitled to rely on any statutory ground which negates [the] right to the subject registration." *Id*. at 1031; *Coach*, 668 F.3d at 1377.

Per *Lipton*, Cubatabaco has the requisite "real interest" in the outcome – removing the blocking Registrations, cited against it under section 2(d), A307-12, so that it can register its COHIBA mark pursuant to its extant Cuban registration, section 44(e), and as authorized by CACR § 515.527. Per *Lipton*, Cubatabaco's belief that it is being damaged by the Registrations is reasonable, as the Registrations are preventing it from registering COHIBA.

It is no answer for the Board: 1) to assert that "standing is *generally conferred*" under these circumstances, A14 (emphasis added), without citing a single contrary case; 2) to provide no explanation why the Board is creating an unprecedented exception directly contrary to this Court's precedents; and 3) to rely on cases that directly undermine its holding that Cubatabaco lacks standing, A15.

No case has ever questioned this holding, and none has ever held that a party

that seeks to register a mark lacks standing to challenge a registration or

application that, as here, is blocking its registration, and has been cited against it

under section 2(d) of the Act.  In case after case, the Board has consistently

recognized that these facts *alone* establish standing to challenge the cited mark.

*See, e.g., ShutEmDown Sports, Inc. v. Lacy*, 102 U.S.P.Q.2d 1036, 1041 (TTAB

2012) ("evidence of its pending application which has been refused registration

based on a likelihood of confusion with the mark in respondent's registration …. is

sufficient to show that petitioner has … standing") (citing cases); *Saddlesprings,*

*Inc. v. Mad Croc Brands, Inc.,* 104 U.S.P.Q.2d 1948, 1950 (TTAB 2012); *Life*

*Zone Inc. v. Middleman Group Inc.*, 87 U.S.P.Q.2d 1953, 1959 (TTAB 2008);

*Great Seats Ltd. v. Great Seats, Inc.*, 84 U.S.P.Q.2d 1235, 1237 (TTAB 2007); *Tri-*

*Star Marketing, LLC v. Nino Fraco Spumanti SRL*, 84 U.S.P.Q.2d 1912, 1914

(TTAB 2007).[6]

The Board has held that Cuban parties have standing in these circumstances,

although they cannot engage in commercial activities under their marks in the U.S.

---

[6]  The Board has cited this rule in numerous other precedential and non-precedential decisions.  *See, e.g.,* TBMP § 309.03(b) & n.11 (citing cases); L. Altman & M. Pollack, *Callman on Unfair Competition, Trademarks & Monopolies,* § 26.81 nn. 50-52 and accompanying text (4th ed. 2013) (citing cases). Indeed, just weeks before and after the Board's decision here, and continuing, the Board cited this rule, without further comment.  *See Hesen-Minten v. Petersen*, 2013 WL 3188908, at *2 & n.7 (TTAB Feb. 26, 2013); *Shock Doctor, Inc. v. Bite Tech, Inc*., 2013 WL 3188914, at *7 (TTAB April 9, 2013); *Ovation LLC v. Ovation, Inc.*, 2013 WL 4635994, at *3 (TTAB Aug. 14, 2013).

*See Corporacion Habanos, S.A v. Guantanamera Cigars Co.* 86 U.S.P.Q.2d 1473, 1475 (TTAB 2008) (holding Cuban party has standing where Examiner cited prior pending application against application under § 2(d); noting authority of CACR § 515.527 and 1996 OFAC Letter), *remanded on other grounds*, 729 F. Supp.2d 246 (D.D.C. 2010), *opp. sustained*, 102 U.S.P.Q.2d 1085 (TTAB 2012); *Corporation Cimex, S.A. v. DM Enter. & Distrib., Inc.*, 2008 WL 5078739, at *2-3 (TTAB Nov. 17, 2008) ("[*a*]*lone*, the fact that applicant's mark was cited as a potential bar to registration of opposer's pending application …*clearly* provides an adequate basis to find that there is no genuine issue as to opposer's standing") (emphasis added). The Board has further held that the prohibition on commercial use of these marks in the U.S. does not change the standing analysis or result. *See Corporacion Habanos, S.A. v. Anncas, Inc.*, 88 U.S.P.Q.2d 1785, 1790 (TTAB 2008) ("So as to be perfectly clear, opposer has standing, although it does not and cannot engage in any business in the United States due to the embargo on Cuban goods."); *CIMEX, supra*, at *3 (same, quoting *Anncas*).

The Board asserted that "standing is *generally* conferred" under these circumstances, A14 (emphasis added), but it failed to cite even one contrary case, and to Cubatabaco's knowledge, none exists. Further, the Board simply ignored the explicit holding of *Lipton,* and thus provided no rationale to depart from *Lipton* or its own numerous decisions, or any other reasoning for creating this

unprecedented exception to this clear unbroken rule.

The *only* case of which Cubatabaco is aware in which a petitioner was held to lack standing where the challenged registration was cited against a pending application, *Coup v. Vornado*, 9 U.S.P.Q.2d 1824 (TTAB 1998),[7] directly undermines the Board's holding.  In *Coup*, the Board found no standing *solely* because petitioner's asserted mark was not entitled to registration as a matter of law, for reasons wholly unrelated to and independent of the existence of the challenged registration.  Thus, although cited by the Examiner, that registration was *not* blocking petitioner's application, and cancelling it could have no effect on petitioner's right to registration.  *See id*. at 1825-26 (petitioner cannot acquire trademark rights in, and thus cannot obtain a registration for, VORNADO because it merely rebuilds, reconditions, and re-sells previously manufactured "Vornado" fans; cancelling challenged registration would not alter that fact).  By contrast, if the impediment of the Registrations were removed, Cubatabaco would be entitled to a registration under § 44(e) on the basis of its Cuban registration (or at least, publication for opposition).  *See* Point I.C, *infra; Empresa V,* 399 F.3d at 479.  Unlike in *Coup*, the Board made no finding that, even if the Registrations were cancelled, Cubatabaco would still have no right to a registration, and nothing in the

---

[7]  The Board cited *Coup* solely for the unremarkable proposition that a "petitioner's failure to prove standing warrants grant of summary judgment," A16, apparently recognizing that *Coup* cannot support its unprecedented standing exception.

record supports such a conclusion.

In the absence of any case finding no standing when the challenged registration or application is blocking the plaintiff's application, the Board relied only on cases in which the challenger did not have a pending blocked application, asserting, erroneously, that "this case is controlled by the Board's established precedents, which hold that where a previous final judgment determines that a party does not own a property interest in a mark, the party lacks standing to challenge another's registration of the same mark."  A15 (*citing Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 98 U.S.P.Q.2d 1890, 1895 n.15 (TTAB 2011); *Gal v. Israel Military Indus. Of the Ministry of Def. Of the State of Israel*, 230 U.S.P.Q. 669, 674 (TTAB 1986), *aff'd*, 824 F.2d 980 (Fed. Cir. 1987)).

The Board, however, ignored the crucial standing distinction between those cases and this one – absent a blocked application, those plaintiffs needed to show a current *alternative* basis for standing, such as a proprietary interest in the mark. For this reason alone, those cases are irrelevant here.  Moreover, as shown below, these cases undermine the Board's holding on the separate ground that the standing determinations there explicitly depended upon and derived from a *prior* analysis and finding of *issue preclusion*, which the Board admittedly did not address here.

### E. The Board's "Standing" Holding Is Dependent on a Preclusion Analysis that the Board Admittedly Never Conducted

The Board's standing analysis expressly opened with the assertion that Cubatabaco's lack of standing "derives from a *binding*, final federal court judgment," A14, and concluded with reliance on "the Second Circuit's *binding* decision," A15 (emphases added).  This explanation, however, fatally confused "standing" with preclusion.  And it begs the very question that both the District Court and the Second Circuit expressly presented to the Board for decision in *Empresa VI*, and *Empresa VII*:  *whether* the Federal Action is "binding" on the Board in the only way that matters – whether, and to what extent, the Federal Action has *preclusive* effect on the Board proceeding.

Indeed, *Gal* and *Slesinger* make this point explicitly – the findings of no standing were expressly dependent upon the Board's *prior* holdings that the plaintiffs' claims were barred by issue preclusion, based on previous federal court judgments.  Simply put, *Gal* and *Slesinger* show that it is not possible for the Board to conclude that the Second Circuit's decision is "binding," without first determining the preclusive effect, if any, of that decision on this proceeding.  Yet the Board admittedly did "not reach the merits of respondent's" preclusion arguments, A16, and so its decision contains not one word why or how the Federal Action is "binding" upon it.  However, if there is no preclusion on one or more of Cubatabaco's cancellation grounds, then the Second Circuit decision is *not*

"binding" as to that ground, and Cubatabaco has standing to pursue any non-precluded ground for cancellation.

In *Gal*, the Board engaged in an extensive issue preclusion analysis, and concluded that opposers were precluded by the federal action from asserting any proprietary rights in the UZI mark.  230 U.S.P.Q. at 671-74.  Only *after* completing its issue preclusion analysis and stating its holding did the Board add:

> In determining then, that *collateral estoppel bars* Gal from asserting proprietary rights in the term "UZI" in this action, we must conclude that *Gal does not have standing* to oppose registration by applicant of the mark sought to be registered *on any statutory ground where proprietary rights in the term are necessary* for standing to exist.

*Id*. at 674 (emphasis added).  The Board could not have been clearer that the finding of no standing was wholly dependent on and derivative of its issue preclusion holding.  There is no suggestion that, in the absence of issue preclusion, opposers would have lacked standing anyway.  In sharp contrast, here the Board gave no explanation how it skipped the preclusion analysis altogether – as it admittedly did – and still determined, solely in reliance on *Gal* and *Slesinger* (in which plaintiffs lacked pending blocked applications) that the Federal Action was somehow "binding," and that Cubatabaco lacked standing.  Moreover, *Gal* carefully distinguished between precluded and non-precluded claims, holding that one opposer did have "standing, as a weapons manufacturer, to raise the issues not precluded from being raised by the prior Court decision," including claims of

fraud. *Id*. at 674.

Notably, in *Estate of Biro, supra,* the Board criticized its decision in *Gal*, finding it "inartfully drafted, confusing standing with merits," referring to the above-quoted language in which the Board found no standing based on its prior finding of issue preclusion. 18 U.S.P.Q.2d at 1385; *see Jewelers Vigilance,* 823 F.2d at 492 ("by requiring JVC to possess a proprietary interest in the name DeBeers in order to have the requisite standing to bring an opposition proceeding under sections 2(a) or 2(d), [the Board] confused a merits determination … with a standing determination").

Like *Gal*, *Slesinger*'s "standing" determination explicitly depended upon and derived from its *prior* issue preclusion holding. The Board again conducted an extensive issue preclusion analysis of the district court's decision that Slesinger had no ownership interest in the POOH marks, 98 U.S.P.Q.2d at 1894-98, finding all elements of issue preclusion satisfied. The Board then concluded, "In view of the foregoing, we find, as a matter of law, that Disney is entitled to summary judgment *on collateral estoppel*." *Id*. at 1898 (emphasis added). In a brief footnote, the Board added that petitioner also lacked standing because, based on the district courts preclusive decision, it had no interests that could be damaged by Disney's registrations. *Id*. at 1895, n.15. The Board made clear that its standing determination derived from its issue preclusion holding, quoting in full the above-

quoted block quote from *Gal,* 230 U.S.P.Q. at 674. Again, the Board made no suggestion that absent its preclusion holding Slesinger would have lacked standing.

### F. Under *Lipton*, Cubatabaco Has a Sufficient "Legitimate Commercial Interest"; It Does Not Need a Proprietary Interest in the Mark

The Board also erred in: 1) asserting that "petitioner, at trial, would *need to show* that it has a protectible *commercial* interest in the COHIBA mark or trade name, in addition to its belief that it would be damaged by respondent's COHIBA registrations, to establish standing," A12-13 (emphasis added), citing a 1986 Board decision, *Chemical New York Corp. v. Conmar Form Systems*, *Inc.*, 1 U.S.P.Q.2d 1139, 1142 (TTAB 1986); and 2) concluding "that petitioner lacks a *legitimate commercial interest* in the COHIBA mark in the United States and that, as a result, its belief in damage resulting from an alleged likelihood of confusion … is unfounded," A15-16 (emphasis added). These assertions are wrong as a matter of fact and law.

First, as noted, Point I.D, *supra*, this Court has held, "We regard the desire for a registration … as a *legitimate commercial interest,*" *Lipton Indus.*, 670 F.2d at 1029 (emphasis added), directly contrary to the Board's unexplained conclusion that Cubatabaco, despite its "desire for a registration" of COHIBA, lacks a "legitimate commercial interest." *Id*.

Second, even assuming the Board was free to ignore *Lipton*'s clear holding that a "desire for a registration" *is* "a legitimate commercial interest," *id*., this

36

Court and the Board have repeatedly held that standing does not require a "commercial interest," in the sense of a proprietary right in, or right to use, the mark.  In *Ritchie*, this Court expressly rejected a "commercial interest" requirement in the challenged mark to establish standing:

> *In no case* has this court *ever held* that one must have a *specific commercial interest*, not shared by the general public, in order to have standing as an opposer…. The crux of the matter is not how many others share one's belief that one will be damaged by the registration, but whether that belief is reasonable and reflects a real interest in the issue.

170 F.3d at 1096-97; *Jewelers Vigilance*, 823 F.2d at 491, 493-94 (opposer "need not have a proprietary interest in the mark on which the section 2(d) opposition is grounded," nor "assert[] that it has a right or has an interest in using the alleged mark"; rejecting Board's holding that "opposer [must] ha[ve] a proprietary right in the [challenged] mark"); *Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 520 (Fed. Cir. 1987) ("board's holding that … petitioner has no standing to bring a cancellation proceeding under section 2(d) because it has not established proprietary rights in [the mark] is wrong as a matter of law") (internal citation, quotation omitted).

Third, *Chemical New York* did not hold that every plaintiff "would *need to show* that it has a protectible *commercial* interest" in the mark to establish standing, A12-13 (emphasis added), and certainly not one challenging a blocking registration.  Indeed, quite the opposite.  The Board, citing *Lipton*, held only that a

party "*may* show that it has standing … under Section 2(d) … *i.e., may* show that it has a 'real interest' in the proceeding, by alleging, and thereafter proving at trial, that it has a real commercial interest in its own mark.…"  1 U.S.P.Q.2d at 1142 (emphasis added).  The Board held that one opposer – who had no registration or application – lacked standing because it "has no interest whatsoever in the 'PRONTO' marks, being no more than the holder of the 'PRONTO' software copyrights…."  *Id.*  Nothing in *Chemical New York* calls into question *Lipton's* and *Ritchie's* clear holdings.

Fourth, the remaining case cited by General Cigar below (not addressed by the Board), does not support the Board's holding.  *See Soro v. Citigroup, Inc.*, 2006 WL 1258955 (TTAB Apr. 25, 2006), and *Soro v. Citigroup*, 287 Fed. Appx. 57 (11th Cir. 2008).  First, Soro lacked a pending application, and predicated standing on an asserted right *to use* the contested mark.  However, because a federal court had *permanently* enjoined Soro from *using* the mark, Soro "cannot establish that he has a right to use the mark" and, therefore, "has no standing to maintain this proceeding because he lacks a legitimate commercial interest in the CITIGROUP mark."  *Soro*, 2006 WL 1258955, at *3; 287 Fed. Appx. at 60 (same, affirming Board); *see also Award Pictures, LLC v. Renaissance Pictures Ltd.*, 2013 WL 2365034, at *1, 3-5 (TTAB Feb. 5, 2013) (no pending application; no standing where opposer based standing on interest in *using* mark, but is "permanently

enjoined from any and all use of the EVIL DEAD mark, or any similar mark"). Here, Cubatabaco does not assert standing based on a right to use the mark, but on its pending blocked application, per *Lipton*; the federal courts neither enjoined Cubatabaco's use of the mark, nor declared that it had no right to do so; and the Board held that the CACR's prohibition on Cuban parties' use of their marks in the U.S. does not deprive them of standing to challenge a blocking application or registration.  Point I.D, *supra*.

### G. The Board Misstated the Second Circuit's Holding, and Relied on Statements Irrelevant to Cubatabaco's Standing

The Board's standing holding was also infected by clear misstatements of the Second Circuit's decision in *Empresa V*.  Thus, the Board repeated General Cigar's erroneous claim that "the Second Circuit determined that the CACR prohibited petitioner from acquiring any property interest in the COHIBA mark in the United States at any time, by any means, … under any legal theory … [so that] petitioner lacks standing to maintain this cancellation proceeding," A13, and that "[w]e agree with respondent."  A14.  The Second Circuit in fact never so held. Indeed, this assertion was directly contrary to General Cigar's admission that the CACR authorizes Cuban parties to acquire U.S. trademark rights through registration, A622, as well as the position of the United States, A571 n.8, the Second Circuit, *see* 399 F.3d at 475, 479, and the District Court, *Empresa VI*, 478 F. Supp. 2d at 520-22 (Second Circuit addressed only "whether this Court's

cancellation and injunction orders constituted a transaction that violated the CACR, rather than the question of whether a cancellation order by the TTAB would also violate the embargo," "did not address the registrability of the COHIBA mark by Cubatabaco," and did not resolve "[w]hether [a]ction by the … TTAB [i]s [b]arred by the Embargo"), *aff'd, Empresa VII*.

The Board also relied on four purportedly "binding" statements of the Second Circuit (without explaining how they were "binding" on Cubatabaco's cancellation claims) to conclude that Cubatabaco "lacks a legitimate commercial interest in the mark," each of which is legally irrelevant to Cubatabaco's standing based on its blocked pending application, and the last three of which are ripped out of the context of the Court's holding.  A14-15.

First, the determination that the CACR barred Cubatabaco from acquiring a "property interest" in the mark prior to General Cigar's post-abandonment use, A14, is irrelevant to whether Cubatabaco has standing pursuant to its pending blocked application, as a party with a blocked application need not have some additional "property interest" in the mark.  Point I.F, *supra.*

Second, the Court did not *hold* that General Cigar "has the full panel of property rights" in the COHIBA mark, including the right to exclude others.  A15. Rather, in commencing its discussion of *whether an injunction* against General Cigar's *use* of COHIBA would be an unlicensed transfer of property to Cubatabaco

in violation of the embargo, the Court observed that "[t]here is no contest that, *as matters stand*, General Cigar has the full panel of property rights" in the mark. 399 F.3d at 476 (emphasis added). The Court immediately followed this observation with its holding that *an injunction against use* in this circumstance would transfer a property right from General Cigar to Cubatabaco "that the embargo prohibits," specifically because of the CACR's "limitation on judicial authority." *Id*. at 476-77. Nothing in this injunction discussion of the CACR's limitation on judicial authority to issue an *unlicensed injunction* is relevant to Cubatabaco's standing before the Board to seek to cancel the Registrations, so it can pursue its section 44(e) application.

Third and fourth, the Court's *dicta* that "pursuant to our holding today, General Cigar's legal right to the COHIBA mark has been established as against Cubatabaco," and that General Cigar has the right to *use* the mark in the U.S. because it "owns" the mark in the U.S., *id*. at 479, simply states the consequence of its holding, *i.e*., the CACR prohibits the courts from enjoining General Cigar's use, because that would be an unlicensed property transfer to Cubatabaco. Thus, although superfluous commentary, it is true that "as matters stand" in light of that holding, *id*. at 476, Cubatabaco cannot *currently* prevent General Cigar from using the mark. Once again, however, the Court's statements do not purport to deny Cubatabaco *standing* to pursue the *licensed* means (via registration) for acquiring

rights in COHIBA, or to immunize the Registrations from a *licensed* challenge.

Giving these statements dispositive import, as did the Board, is not only contrary to a textual analysis of the decision, but ignores the issues that were before the Second Circuit and what it needed to, and did, decide – whether the CACR authorized the District Court's grant of cancellation and injunctive relief. *Empresa VI,* 478 F. Supp.2d at 520-22.  Had the Board not bypassed the necessary preclusion analysis, the non-binding, non-dispositive nature of these statements, including that they provide no basis to deny Cubatabaco standing, would have been apparent.

## II.    THERE IS NO ISSUE PRECLUSION

There is no issue preclusion here, because the Second Circuit did not address the substantive issues raised in Cubatabaco's cancellation claims, and the issue whether the CACR barred the federal courts from cancelling the Registrations is a different issue than whether the CACR bars the Board from cancelling them.  This Court has discretion either to remand these pure questions of law to the Board, which did not reach the issue preclusion questions, or to resolve them itself in the first instance.  *Delta-X Corp. v. Baker Hughes Production Tools, Inc.,* 984 F.2d 410, 413 n.2 (Fed. Cir. 1993) (applying Fifth Circuit law); *Burella v. City of Philadelphia*, 501 F.3d 134, 146, n.16 (3d Cir. 2007).

## A. There Is No Preclusion When, as Here, There Is Any Uncertainty Whether All Elements of Preclusion Are Established

"The doctrine of issue preclusion … which serves to bar the revisiting of 'issues' that have been already fully litigated, requires four factors:

(1) identity of the issues in a prior proceeding;

(2) the issues were actually litigated;

(3) the determination of the issues was necessary to the resulting judgment; and,

(4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000) (citing numerous authorities), quoted in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,* 719 F.3d 1367, 1371 (Fed. Cir. 2013); *see also Mayer/Berkshire*, 424 F.3d at 1232.  A heavy burden is on the proponent to satisfy all requirements for preclusion.  *RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003).  Here, General Cigar has failed to show that it has satisfied the first three issue preclusion requirements.

This Court will not foreclose trademark registration litigation when there is any doubt whether claim or issue preclusion applies.  Addressing both types of preclusion, this Court held that "the circumstances for preclusion must be certain to every intent."  *Mayer/Berkshire,* 424 F.3d at 1234 (internal quotation omitted).  "Caution is warranted in the application of preclusion by the PTO, for the purposes

of administrative trademark procedures include protecting both the consuming public and the purveyors." *Id.* "[A] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." *Id.* (internal quotations omitted); *see N.J. Inst. of Tech. v. Medjet, Inc.*, 47 Fed. Appx. 921, 926 (Fed. Cir. 2002) (where "claim preclusion is at all questionable," "we must resolve the ambiguity in the scope of an earlier decision in favor of the litigants opposing res judicata").

These strictures take on added force here. General Cigar chose not to assert a counterclaim in the Federal Action for dismissal of Cubatabaco's cancellation petition, as is common. *Empresa VI*, 478 F. Supp.2d at 520. It cannot benefit now from any ambiguity in *Empresa V* as a result of that choice. Moreover, its declaratory judgment counterclaim was dismissed, and the District Court held that the Second Circuit had *not* determined whether Cubatabaco can cancel the Registrations in TTAB proceedings. *Id.* at 519-21. This holding, litigated and essential to the denial of General Cigar's motion to dismiss Cubatabaco's petition, is both binding upon General Cigar and patently correct, particularly given the general license authorizing all transactions in the PTO incident to registration, CACR § 515.527, including, under OFAC's authoritative construction, cancellation of blocking registrations on otherwise valid grounds. A483.

Because the Federal Action is not preclusive of any issue essential to the specific grounds for cancellation asserted in the Amended Petition, this proceeding should go forward on each non-precluded ground.

### B. Issue Preclusion Does Not Bar Cancellation of the Second Registration

### 1.     Cancellation Pursuant to § 2(d) of the Act

Cubatabaco asserts that the Board should cancel the Second Registration pursuant to § 2(d) of the Act (Sixth Ground) because Cubatabaco used the mark in the U.S. through a campaign of national advertising and promotion before General Cigar commenced use of or applied to register the mark in late 1992. The Second Circuit did *not* pass on this issue, either as to whether the CACR authorized the Board to cancel the Second Registration on this basis or whether it stated a valid basis for cancellation, and thus there is no issue preclusion.

First, the Second Circuit held that the CACR prohibited Cubatabaco from acquiring trademark *ownership* in the U.S. under the well-known marks doctrine. 399 F.3d at 471-76.[8] Cubatabaco's § 2(d) ground for cancellation, however, is not based on *ownership* of the COHIBA mark under that doctrine. This Court has held that, under § 2(d), a "foreign opposer can present its opposition on the merits by

---

[8] Because of its CACR holding, the Circuit expressly did "not reach the question of whether to recognize the famous marks doctrine" as a general matter. 399 F.3d at 471. Thus, to the extent the validity of the well-known marks doctrine is implicated in any of Cubatabaco's grounds for cancellation, there is no preclusion of that issue.

showing only *use* of its mark" in the U.S., as distinct from use in commerce. *First Niagara,* 476 F.3d at 871 (emphasis original). Advertising and promotion constitute such "use" in the U.S.[9] and, therefore, provide a statutory "basis for objection to another's registration" under § 2(d), although such "use" does not establish trademark ownership. *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 20 (D.C. Cir. 2008) (internal quotations omitted). Although not identified as a requirement in *First Niagara*, to the extent this § 2(d) claim also requires that the "use must be of such a nature and extent as to create public identification of the target term with the opposer's product," *id.* (internal quotations omitted), the District Court's findings regarding the Cuban COHIBA's renown show that Cubatabaco can easily meet that test. *See Empresa III*, 70 U.S.P.Q.2d at 1657-63, 1680-83; *Aktieselskabet,* 525 F.3d at 21 ("allegation of marketing in the United States, together with the inference of public association, is enough to" state § 2(d) "use" claim).[10]

---

[9] The embargo does not prohibit advertising and promotion. *See* 50 U.S.C. App. § 5(b)(4) (President denied "the authority to regulate or prohibit, directly or indirectly, the importation" from Cuba, "whether commercial or otherwise, regardless of format or medium of transmission, of any information or informational materials"); 31 C.F.R. §§ 515.206(1), 515.545 (implementing legislation); A484-85 (1996 OFAC ruling confirming paid advertisements not prohibited).

[10] Indeed, based on the District Court's findings, the Cuban COHIBA had the requisite fame and renown in the U.S. prior to General Cigar's 1992 use and registration to cancel the Second Registration under *The All England Lawn Tennis*

Second, Cubatabaco argued that, under § 43(a), the *injunction* against General Cigar's use of the mark should be affirmed based on consumer confusion, even if the CACR barred Cubatabaco from acquiring trademark ownership under the well-known marks doctrine. The Second Circuit rejected this argument solely on the ground that *an injunction* would – in violation of the CACR – be an *unlicensed* transfer from General Cigar to Cubatabaco of the "right to exclude" others from using the COHIBA mark. 399 F.3d at 476-79. Here, no injunction is sought, the Board's authority under the CACR to cancel a registration was not addressed, and, thus, there is no issue preclusion on the question of that authority.

The Second Circuit also stated that as a result of its CACR holding barring Cubatabaco from acquiring trademark ownership, General Cigar currently "owns" the mark, and an owner could not be liable for consumer confusion under § 43(a). *Id*. at 478-79. This discussion was plainly not "necessary to the resulting judgment" *Jet*, 223 F.3d at 1366: the Court reversed the injunction exclusively because it held that an unlicensed injunction is a prohibited transfer of rights under the CACR. 399 F.3d at 479. Even if not *dictum,* there is no preclusion, because

---

*Club (Wimbledon), Ltd. v. Creations Aromatiques Inc.*, 220 U.S.P.Q. 1069 (TTAB 1983), in which the Board refused a registration based on the foreign mark's renown in the U.S., without registration or use (Tenth Ground). The Second Circuit did not address or decide whether CACR § 515.527 authorized the Board to cancel the Second Registration based on the Cuban COHIBA's renown, whether renown is a ground for cancellation, or whether the Cuban COHIBA had sufficient renown. *See* 399 F.3d at 472. Thus, there is no issue preclusion whether Cubatabaco can prevail based on its prior renown.

this discussion was predicated solely on General Cigar's use of the mark, not its

registrations.  *See id.*at 472 (General Cigar "owns the mark now because it

resumed *use* of the mark in November 1992") (emphasis added).  Indeed, the

"valid registration" comment appears under the heading "Cubatabaco's Claims for

*Injunctive* Relief …" *id*. at 476 (emphasis added), and the Court's discussion and

holdings therein are exclusively addressed to an injunction under § 43(a) and the

Paris Convention, *id*. at 476-81.

During discussion of this alternative § 43(a) injunction argument, the Second

Circuit stated:

> It may be true that, as the government argues, 'Cubatabaco's foreign
> registrations give it the right to register its COHIBA mark [in the United
> States], absent General Cigar's registration.'  *Amicus Curiae* Br. at 12.  That
> is, however, a hypothetical circumstance upon which we need not speculate.
> As we hold today, General Cigar *does have* a valid registration on the
> COHIBA mark in the United States.

*Id.* at 479 (emphasis original).  This reference to its "hold[ing]" is necessarily to its

CACR-based ruling:

> We also reject Cubatabaco's argument that, even if the embargo bars its
> acquisition of the mark, it nonetheless is entitled, based on the 'fame' of its
> mark, to obtain cancellation of General Cigar's mark and an injunction
> barring General Cigar from using the mark in the United States because to
> grant this relief would entail a transfer of property rights in the COHIBA
> mark to Cubatabaco in violation of the embargo.

*Id*. at 471.  This holding, to which the later comment about a "valid registration"

textually and necessarily refers (as there is no other holding concerning

cancellation), has no preclusive effect:  the CACR provides a general license authorizing the *Board*, as distinct from the District Court, to cancel the Registrations, an issue neither presented, nor litigated, nor decided in the Federal Action.

Plainly, the "valid registration" comment did not adjudicate whether the Board may cancel an otherwise valid registration, pursuant to its authority under the Act and the CACR's general license.  To convert this comment into issue preclusion as to the Board's authority to cancel the Registrations would violate the requirement that "the circumstances for preclusion must be certain to every intent." *Mayer/Berkshire* 424 F.3d at 1234 (internal quotation omitted); *see also id*. at 1232-33 (infringement claim "in the district court is not automatically of preclusive effect in a cancellation proceeding in the PTO," because issues concerning use and a right to registration are not the same) (discussing cases); *Empresa VI*, 478 F. Supp.2d at 522.

### 2. Cancellation Based on General Cigar's Copying of Cubatabaco's COHIBA Mark to Exploit Its Renown in the U.S.

Cubatabaco alleges that in late 1992, General Cigar deliberately copied Cubatabaco's COHIBA mark to exploit its substantial renown and reputation in the U.S, and that Cubatabaco is entitled to cancellation, without asserting ownership of the mark, for this reason (Eighth Ground).  *See* Amended Petition, ¶¶ 91-95; *Person's Co., Ltd v. Christman*, 9 U.S.P.Q.2d 1477 (TTAB 1988), *aff'd,* 900 F.2d

1565 (Fed. Cir. 1990).

In *Person's,* a foreign party sought to cancel a registration of an identical mark adopted with knowledge of the foreign mark, prior to the foreign mark's use or registration in the U.S. A foreign party in such circumstance could cancel the registration if the foreign mark had prior renown in the U.S. and the registrant had copied the foreign mark "with the intent of trading upon the good will or reputation of another." *Id.* at 1480. The Board found against the foreign party only because (unlike Cubatabaco) its mark "had no reputation or good will here off of which respondent could have intended to trade." *Id.* In affirming, this Court agreed that knowledge of a foreign use can constitute grounds for cancellation if "the foreign mark is famous here," 900 F.2d at 1570, but when the registrant initiated use in the U.S., the foreign party "had no goodwill in the United States and the 'PERSON'S' mark had no reputation here." *Id*. at 1569-70. No post-*Person's* authority has disagreed that a mark can be cancelled if registered "with the intent of trading upon the good will or reputation of another," 9 U.S.P.Q.2d at 1480, when there is a showing of the foreign mark's substantial renown in the U.S. Cubatabaco has alleged that its mark was sufficiently famous here, prior to General Cigar's intentional copying of the mark in order to exploit that fame, consistent with the District Court's findings. *Empresa III*, 70 U.S.P.Q.2d at 1680-83.

General Cigar argued below that issue preclusion barred this cancellation

ground, because the Second Circuit found no "bad faith" under a New York state common law unfair competition claim, or because the District Court found no "bad faith" under one of the eight factors in the Second Circuit's likelihood of confusion trademark infringement test, *Id.* at 1686-88, but did not show that the "bad faith" issue on those claims is the same issue as the cancellation claim under *Person's*.

First, the vacated District Court infringement judgment "has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case," *U.S. Philips Corp. v. Sears Roebuck & Co.,* 55 F.3d 592, 598 (Fed. Cir. 1995) (quotations, citation omitted), as General Cigar acknowledged.  A245.

Second, based solely on that vacated infringement finding, the District Court held that General Cigar's mistaken belief that it had not abandoned the mark when it commenced use in 1992 did not meet *New York's common law unfair competition* putative "bad faith" requirement.  *Empresa III,* 70 U.S.P.Q.2d at 1693-94.  The Second Circuit affirmed on that basis.  *Empresa V*, 399 F.3d at 485.  That "bad faith" state law unfair competition issue is plainly not the same as the issue under *Person's* – whether the COHIBA mark was sufficiently famous and whether General Cigar had copied that mark "with the intent of trading upon [that] good will or reputation."  *Person's*, 9 U.S.P.Q.2d at 1480.  Because these issues are not identical, the Second Circuit's unfair competition adjudication is not issue preclusive.

### 3.    Cancellation Based on Article 6*bis* of the Paris Convention

Article 6*bis* of the Paris Convention provides that the owner of a foreign mark "well known" in the U.S. may cancel a registration of a confusingly similar mark (Ninth Ground), without requiring ownership of the mark in the U.S., unlike a trademark infringement claim under the common law well-known marks doctrine.  *See* 399 F.3d at 479-80 (text of Art. 6*bis*).  The Second Circuit rejected Cubatabaco's Article 6*bis* claim expressly because the CACR prohibits the *federal courts* from granting injunctive or cancellation relief as an *unlicensed* transfer of rights.  *Id.* at 476 (the CACR's "limitation on judicial authority applies … to Cubatabaco's … Paris Convention claims"); *see id*. at 479-81 (acknowledging Cubatabaco's Article 6*bis* claim "may be correct," but for CACR restrictions).  Because the Court did not address or decide the merits of the claim, or whether a *Board* cancellation order under Article 6*bis* is licensed by CACR § 515.527, there is no issue preclusion.[11]

---

[11]  In *Person's*, the petitioner claimed that the challenged registration constituted unfair competition under Article 6*bis,* and this Court rejected that claim, without further discussion, because the "Board cannot adjudicate unfair competition issues," 900 F.2d at 1570-71, without addressing whether Article 6*bis* was enforceable under the Act directly through section 17, *see* Point II.B4, *infra*, or through section 44.  *In re Rath*, 402 F.3d 1207, 1209-11 (Fed. Cir. 2005), held that the Paris Convention is not self-executing, but did not address Article 6*bis*, including whether it is incorporated into the Act through section 44.  The Supreme Court has never addressed Article 6*bis*'s application in the U.S.

#### 4.    Cancellation Pursuant to Article 8 of the IAC

Cubatabaco maintains that both the First and Second Registrations should be cancelled directly under IAC, Article 8 (Fifth, Seventh Grounds).  The Board has held that it can cancel registrations directly under Article 8, pursuant to the *Board's* jurisdiction under 15 U.S.C. § 1067(a), *see British-Am. Tobacco Co. v. Phillip Morris, Inc*, 2001 WL 256142, at 2 (TTAB Feb. 27, 2001), *on reconsid. from*, 55 U.S.P.Q.2d 1585, 1588-89 (TTAB 2000); *Diaz v. Servicios de Franquicia Pardo's S.A.C.*, 83 U.S.P.Q.2d 1320, 1323 (TTAB 2007), and can refuse registrations in opposition proceedings, including on behalf of Cuban parties, under the parallel provision of IAC, Article 7, *see CIMEX, supra,* 2008 WL 5078739, at *2; *Empresa V*, 399 F.3d at 481-82 (text of IAC, Art. 7, 8).

In *British-American*, the Board explained its "jurisdiction" to decide the IAC claim:  "the *Board* is granted express statutory authority, in Section 17(a) of the Act, 'to determine and decide the respective rights of registration,' and registrability *is* the issue before us in this case."  2001 WL 256142, at *2 (quoting 15 U.S.C. § 1067(a) (emphasis original).  Notably, section 17(a)'s jurisdictional grant is to the "Board to determine and decide the respective rights of registration"; it makes no reference to, and confers no jurisdiction upon, the district courts.  *See Diaz,* 83 U.S.P.Q.2d at 1323 (IAC Article 8 "created a cause of action" "independent of the Lanham Act," but "within the Board's subject matter

jurisdiction," because the Board "was authorized under the Lanham Act to determine the registerability of marks in the context of … *inter partes* proceedings"); *British-Am. Tobacco,* 55 U.S.P.Q.2d at 1588-89 (same).

The Second Circuit affirmed the dismissal of Cubatabaco's IAC claims solely on the ground "that Cubatabaco cannot assert claims under Articles 7 and 8 pursuant to Section 44(h) of the Lanham Act because [they] do not relate to the repression of unfair competition." 399 F.3d at 483. Cubatabaco, however, does not assert its Article 8 claim here pursuant to Section 44(h), and need not do so under the Board's decisions. Because the Second Circuit did not decide whether Cubatabaco is entitled to cancel the Registrations directly under the IAC, and apparently is without jurisdiction to do so, the issues in the Federal Action and here are not identical. Thus, there is no issue preclusion. There is also no preclusion when, as here, the second tribunal has jurisdiction that the first tribunal lacked. *See* Point III, *infra*.

### C. Issue Preclusion Does Not Bar Cancellation of the First Registration

In order for Cubatabaco to prevail, the Board must cancel both Registrations. Because the Second Circuit held that the CACR's limitation on judicial authority barred the federal courts from granting the relief sought by Cubatabaco, that Court never adjudicated the issues Cubatabaco raised to cancel the First Registration, or that it raises here. Thus, there is no issue preclusion with respect to these grounds

for cancellation.

### 1. Cancellation of the First Registration on Grounds of Abandonment

The District Court found that General Cigar had abandoned the First Registration during over five years of non-use prior to late 1992, *Empresa I*, 213 F. Supp.2d at 267-71; the Second Circuit expressly did "not decide whether the District Court properly found that General Cigar had abandoned its mark between 1987 and 1992." *Empresa V*, 399 F.3d at 472. Consequently, there is no issue preclusion on Cubatabaco's abandonment claim against the First Registration.

### 2. Cancellation of the First Registration on Grounds of Fraud and Improper Motive

General Cigar did not argue below that Cubatabaco's claims for cancellation of the First Registration based on General Cigar's fraud on the PTO (Second and Third Grounds) are barred by issue preclusion, and acknowledged that the District Court did not reach the fraud issues because it cancelled the First Registration as abandoned. *See* A247 n.3; *Empresa I*, 213 F. Supp.2d at 266 n.30. The Second Circuit never addressed any of the grounds for cancellation of the First Registration, beyond its CACR holding regarding unlicensed transfers, which as shown is not preclusive.

Instead, General Cigar argued it was entitled to summary judgment on the fraud claims solely on their merits, but submitted *no evidence* in support of its

arguments.  A246-250; A286-87.[12]  Nor did General Cigar argue that the fraud

claims could not state a valid legal claim for cancellation, if supported by evidence.

In contrast, Cubatabaco submitted extensive evidence developed in the Federal

Action that created at least genuine material fact disputes concerning these grounds

for cancellation.  A274-77; Dkt. 70 (Declaration of David Goldstein, and annexed

exhibits).

Given the disputed material facts, the absence of a preclusion claim, and that

neither the Board nor the courts has addressed these claims, the Court should

remand for consideration of these grounds to cancel the First Registration.

Cubatabaco also seeks cancellation of the First Registration because General

Cigar sought the First Registration in *1978* for the improper purpose of blocking

Cubatabaco's entry into the U.S. market (Fourth Ground).  General Cigar argued

that this claim was precluded by the courts' adjudication of an entirely unrelated

issue –General Cigar's mistaken belief that it had not abandoned the mark when it

commenced use *in 1992* did not constitute "bad faith" under New York's common

law of unfair competition.  A251-52; *see* Point II.B.2, *supra*.  Thus, there can be no

preclusion of the unrelated issue of General Cigar's improper acts in 1978.

---

[12]  Without explanation, instead of relying on the actual evidence adduced and
presented at trial *in this case*, General Cigar cited to a different case, not involving
Cubatabaco, *General Cigar Co., Inc. v. G.D.M., Inc.,* 988 F. Supp. 647 (S.D.N.Y.
1997), in which the "evidence" General Cigar submitted regarding its First
Registration and claimed use of the mark in a preliminary injunction proceeding
was extremely incomplete, at best.

### III.  GENERAL CIGAR LIMITED ITS CLAIM PRECLUSION DEFENSE TO NEW CLAIMS; THE PARTIES AGREE THERE ARE NONE

General Cigar expressly limited its claim preclusion argument solely in the event Cubatabaco asserted it was raising *new* claims in the Amended Petition that it had not raised in the Federal Action, and further argued, "All of the claims of the [Amended] Petition were previously asserted by Cubatabaco in the Federal Action, and are barred by *issue* preclusion.  *If* Petitioner asserts in response that it has raised *new* claims … those *new* claims would be barred by the doctrine of claim preclusion." A255 (emphasis added); *see id.* (argument heading: "Claim Preclusion Bars Any *New* Claims by Cubatabaco"); A289 (arguing only that any "*new* theories are barred by claim preclusion") (emphasis added).  In response, Cubatabaco did *not* disagree that it had not raised any new grounds for cancellation.

Because General Cigar explicitly limited its claim preclusion argument solely to any new claims, and the parties agree there are no new claims, there is no claim preclusion question presented here.[13]  Moreover, the Board expressly did not

---

[13]  In its Reply, General Cigar mistakenly claimed that Cubatabaco "acknowledges that it is raising legal theories for cancellation of the Second Registration that were not asserted in the Federal Action," referring to Cubatabaco's § 2(d) claim, and its IAC claim.  A289  Even assuming a "legal theory" can be claim precluded, in fact, Cubatabaco merely noted that "[t]he Second Circuit did *not* pass on this [§ 2(d) ground for cancellation," either as to the TTAB's authority to cancel on this basis, or whether it stated a valid ground for cancellation, A264, and that the Circuit held only that Cubatabaco could not assert its IAC claims under § 44(h), and that its

address claim preclusion. A16. This Court should decline to address any new or different claim preclusion arguments that General Cigar may now attempt to raise for the first time on appeal.

In any event, there is no claim preclusion here, as Cubatabaco explained below, A260-63, and as General Cigar effectively conceded by limiting its defense only to assertedly new claims. First, there is no claim preclusion when, as here, "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563 (Fed. Cir. 1996) (internal quotations omitted) (discussing cases and commentary), or when only an administrative agency, not a court, has the authority to address a matter. *See Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc.*, 567 F. Supp. 66, 74, n.5 (S.D. Tex. 1983); 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice And Procedure, Juris* § 4412 (2d ed. 2013). The Second Circuit reversed the District Court's cancellation order *not* because there was no legal ground for cancellation, or because the *Board* had no authority to cancel the Registrations, but because of the "limitation on *judicial* authority" imposed by the CACR's prohibition on *unlicensed* transfers of property. *Empresa V*, 399 F.3d at 477 (emphasis added). The Board, however, does have such authority under the

---

IAC claims in the Amended Petition were brought directly under the IAC, A267. Cubatabaco never asserted that these claims were not brought in the Federal Action.

general license of CACR § 515.527 and the 1996 OFAC Letter; therefore, there is no claim preclusion.

Second, claim preclusion applies only when the earlier judgment was "on the merits," *Jet,* 223 F.3d at 1362, not when the "reason for dismissal … is more of a pre-condition than a consideration of the merits". *N.J. Inst. of Tech.*, 47 Fed. Appx. at 925; *see Murthy v. Vilsack*, 609 F.3d 460, 466 (D.C. Cir. 2010); *Costello v. United States*, 365 U.S. 265, 285-87 (1961) (non-merits dismissals for "lack of jurisdiction" under Fed. R. Civ. Proc. 41(a) include "failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim").  The Second Circuit never decided: 1)  the merits of any of the substantive grounds for cancellation asserted here, as the District Court found, *Empresa VI*, 478 F. Supp.2d at 516-17; 2) that there were no grounds for cancellation by a forum licensed by the CACR to grant that relief; or 3) that the Board was not such a forum.  *See id.* at 520-22.  Rather, it determined that Cubatabaco lacked a prerequisite for relief – a general or specific license under the CACR, which prevented the courts from cancelling the Registrations.  That decision, addressed to a "precondition" of suit, not the merits, is not claim preclusive.

# CONCLUSION

For the foregoing reasons, the judgment below should be reversed and remanded.

Dated:  September 20, 2013

Respectfully submitted,

By:   /David B. Goldstein/
      DAVID B. GOLDSTEIN
      MICHAEL KRINSKY
      RABINOWITZ, BOUDIN,
        STANDARD, KRINSKY &
        LIEBERMAN, P.C.
      45 Broadway, Suite 1700
      New York, New York 10006-3791
      (212) 254-1111
      dgoldstein@rbskl.com
      *Attorneys for Petitioner Empresa*
      *Cubana del Tabaco*

# ADDENDUM

THIS DECISION IS NOT A
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

GCP

Mailed:  March 14, 2013

Cancellation No. 92025859

Empresa Cubana Del Tabaco
d.b.a Cubatabaco

        v.

General Cigar Co., Inc.

**Before Quinn, Cataldo, and Zervas,**
**Administrative Trademark Judges.**

**By the Board:**

    This case now comes before the Board for consideration
of (1) respondent's motion for summary judgment on the
grounds that (i) petitioner lacks standing to pursue this
cancellation proceeding, and (ii) petitioner's asserted
claims are precluded by the doctrines of *res judicata* and
collateral estoppel; and (2) petitioner's motion to use
testimony from a civil action in opposition to respondent's
motion for summary judgment.  The motions are fully
briefed.

    By way of background, on January 15, 1997, petitioner
filed a petition for cancellation that seeks to cancel two
registrations owned by respondent both for the mark COHIBA;

Cancellation No. 92025859

one in standard characters,[1] and the other, as displayed
below,[2] each for "cigars" in International Class 34.

# COHIBA

By an order dated June 23, 2011, the Board addressed
various earlier filings by the parties and, *inter alia*,
permitted petitioner to file a motion or pleading, as it
deemed appropriate, relevant to its petition to cancel.
The same day, petitioner filed an amended petition to
cancel.  As grounds for cancellation, petitioner alleges
the following claims in its amended petition to cancel:
(1) abandonment, (2) fraud, (3) respondent's registrations
were obtained in bad faith, (4) priority and likelihood of
confusion under Section 2(d) of the Lanham Act, (4) relief
under Articles 7 and 8 of the General Inter-American
Convention for Trademark and Commercial Protection ("IAC"),
(5) respondent improperly obtained its registrations for
the sole purpose of capitalizing on and exploiting the
renown and reputation of petitioner's COHIBA mark, (6)
relief pursuant to Article 6*bis* of the Paris Convention,

---

[1] Reg. No. 1147309, issued on February 17, 1981 on the Principal
Register, claiming February 13, 1978, as both the date of first
use anywhere and as the first date of use in commerce.
[2] Reg. No. 1898273, issued on June 6, 1995, claiming December
1992, as both the first date of use anywhere and as the first
date of use in commerce.

2

Cancellation No. 92025859

(7) likelihood of confusion under the "well-known" marks doctrine, and (8) a stand-alone priority of use claim.

Respondent filed its answer to the amended petition to cancel on July 7, 2011 denying the salient allegations asserted therein.[3]

Long before the filing of petitioner's amended pleading, the Board had, on January 28, 1998, suspended this proceeding pending the final determination of a civil action involving the parties herein.  The civil action has been finally determined.  A review of the disposition of the civil action is in order, in light of the operative pleadings for this case.

**Federal Action**

On November 12, 1997, petitioner commenced the federal action by filing a complaint in the United States District Court for the Southern District of New York.[4]  In its civil complaint, petitioner alleges that respondent's use of the COHIBA mark constitutes trademark infringement under the Trademark Act and international conventions, and unfair competition and misappropriation under New York law. Petitioner requested that the district court grant, among

---

[3] In view thereof, petitioner's amended petition to cancel and respondent's answer thereto are now the operative pleadings in this case.
[4] Case No. 97 CIV. 8399, styled *Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro Corporation and General Cigar Co.*

Cancellation No. 92025859

other relief, an order canceling respondent's involved
registrations.  In 2002, the district court dismissed
petitioner's claims under Articles 7 and 8 of the IAC and
Article 6*bis* of the Paris Convention because these
international conventions did not confer a right to sue for
unfair competition separate from the Trademark Act.  *See
Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v. Culbro
Corporation and General Cigar Co.*, 213 F. Supp. 247, 281-84
(SDNY 2002).  The district court also granted, in part,
petitioner's motion for partial summary judgment, finding
that respondent had abandoned its COHIBA mark subject to
its involved Registration No. 1147309 through non-use from
1987-1992, and ordered this registration canceled.  *Id*. at
267-271.

Following a bench trial, the district court issued a
decision on March 26, 2004 dismissing petitioner's claims
for New York common-law unfair competition and
misappropriation, finding that bad faith was an essential
element of these claims, and that there was no evidence
that respondent selected or used the COHIBA mark in bad
faith.  *See Empresa Cubana Del Tabaco, d.b.a. Cubatabaco v.
Culbro Corporation*, 70 USPQ2d 1650 (SDNY 2004).  The
district court also dismissed petitioner's claims for
violation of the Federal Trademark Dilution Act and the New

Cancellation No. 92025859

York anti-dilution statute, and for trade dress

infringement, deceptive trade practices, trade dress

dilution and false advertising.  70 USPQ2d at 1692-93,

1694-96.

The district court, however, found in favor of

petitioner on its claim for trademark infringement under

Section 43(a) of the Trademark Act.  70 USPQ2d at 1692.  It

concluded that by 1992, when respondent applied for its

second registration for the COHIBA mark, petitioner had

acquired priority rights in the mark COHIBA in the United

States over respondent under the well-known or famous marks

doctrine.  *Id.*  It based this finding upon its previous

holding that respondent had lost its priority by abandoning

use of the COHIBA mark in 1987 and not resuming such use

until 1992.  213 F. Supp.2d at 269.  However, according to

the district court, by 1992 the COHIBA mark had become

famous in the United States and associated with

petitioner's cigars.  The district court stated that

petitioner had rights in the mark that were superior to

those of respondent and these rights preclude respondent

from obtaining its second registration for the COHIBA mark.

70 USPQ2d at 1692.  The district court also found that

there was a likelihood of U.S. consumer confusion between

Cancellation No. 92025859

petitioner's COHIBA mark and respondent's COHIBA mark.  70
USPQ2d at 1689.

In view of these findings, the district court ordered
the cancellation of respondent's second registration for
the mark COHIBA, i.e., Registration No. 1898273, enjoined
respondent from further use of the COHIBA mark, and ordered
respondent to recall all goods sold under the COHIBA mark.
*Id.*  This determination was embodied in an Order, Judgment
and Permanent Injunction.  Respondent appealed to the
Second Circuit from the adverse portions of the district
court judgment.  Petitioner cross-appealed from those
portions of the district court's pretrial orders and the
district court judgment that had dismissed some of
petitioner's claims.

On February 24, 2005, the Second Circuit issued an
opinion reversing the district court's finding of
likelihood of confusion.  *See Empresa Cubana Del Tabaco,*
*d.b.a. Cubatabaco v. Culbro Corporation, General Cigar Co.,*
*Inc. and General Cigar Holdings, Inc.*, 399 F.3d 462, 73
USPQ2d 1936 (2d Cir. 2005).  It vacated the district
court's cancellation of respondent's second registration,
and the injunctive and recall relief ordered by the
district court.  The Second Circuit's reversal was based on
the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. §

6

Cancellation No. 92025859

515.201, *et seq.*, which embody the terms of the United

States' economic embargo on Cuba.  The CACR prevents Cuban

entities such as petitioner from selling cigars in the

United States.  73 USPQ2d at 1938.  The Second Circuit held

that (1) "absent a general or specific license" from the

Department of the Treasury's Office of Foreign Assets

Control ("OFAC")," Section 515.201(b) of the CACR

"prohibits the transfer of property rights, including

trademark rights, to a Cuban entity by a person subject to

the jurisdiction of the United States."  73 USPQ2d at 1944.

It also found that forbidden property transfers also

include transfers by operation of law.  73 USPQ2d at 1945-

46.

The Second Circuit found it unnecessary to decide

whether the Trademark Act incorporated the "famous marks"

doctrine, because even if it were incorporated, Section

515.201(b)(2) of the CACR "clearly bars [petitioner's]

acquisition of the COHIBA mark through the famous marks

doctrine."  73 USPQ2d at 1946.  The Second Circuit held

that petitioner was not authorized to acquire any rights in

the COHIBA mark under any general license in effect

previously or at the time of the opinion.  73 USPQ2d at

1947.  The court also concluded that the special license

granted to petitioner by OFAC, which allowed petitioner to

7

Cancellation No. 92025859

sue respondent in U.S. courts, "does not authorize
transfers of property barred by the Regulations," and thus
could not support acquisition of the COHIBA mark by
petitioner.  *Id*.

The Second Circuit also rejected the argument that,
even if petitioner could not acquire the COHIBA mark in the
United States, it was still entitled to obtain cancellation
of respondent's registration of the COHIBA mark and an
injunction preventing respondent from using the mark in the
United on the basis of alleged consumer confusion.  The
Second Circuit specifically held that

> granting [petitioner] the injunctive relief sought
> would effect a transfer of property rights to a Cuban
> entity in violation of the embargo.  **There is no
> contest that, as matters stand, [respondent] has the
> full panel of property rights in the COHIBA mark,
> including the right to exclude or limit others seeking
> to use the mark in the United States**...As it is
> exactly this brand of property right transfer that the
> embargo prohibits, **we cannot sanction a grant of
> injunctive remedy to [petitioner] in the form of the
> right, privilege and power to exclude [respondent]
> from using its duly registered mark**…[T]his limitation
> on judicial authority applies equally to
> [petitioner's] Lanham Act and Paris Convention claims.

73 USPQ2d at 1947 (emphasis added).

The Second Circuit also found that, inasmuch as
respondent was the owner and sole rightful user of the
COHIBA mark in the United States, petitioner could not
obtain relief on the basis that respondent's use of the

Cancellation No. 92025859

COHIBA mark causes confusion in the United States.  73
USPQ2d at 1949.  The Second Circuit concluded that
petitioner's claims "against [respondent's] use of its duly
registered COHIBA mark cannot succeed as a matter of law."
*Id.*

The Second Circuit further found that Article 6*bis* of
the Paris Convention and Sections 44(b) and 44(h) of the
Trademark Act do not require "cancellation of
[respondent's] properly registered trademark" or an
injunction against use of the mark.  73 USPQ2d at 1950.  It
also affirmed the district court's dismissal of
petitioner's claims under Articles 7, 8, 20 and 21 of the
IAC and Article 10*bis* of the Paris Convention.  73 USPQ2d
at 1950-53.  Additionally, the Second Circuit affirmed the
district court's dismissal of petitioner's other claims,
including its dismissal of New York unfair competition and
misappropriation claims on the grounds that respondent had
not acted in bad faith.  73 USPQ2d at 1954.

The Second Circuit remanded the case to the district
court for entry of an order (1) dismissing all of
petitioner's remaining claims, and (2) "vacat[ing] those
portions of the District Court's order that cancel[led]
[respondent's] registration," enjoined respondent from use
of the COHIBA mark, and required recall of COHIBA-labeled

9

Cancellation No. 92025859

products and corrective notices. 73 USPQ2d at 1954. The
Second Circuit's judgment was issued as a mandate on
February 8, 2006, after the U.S. Supreme Court denied
petitioner's petition for a writ of certiorari. *See
Empresa Cubana Del Tabaco, aka Cubatabaco v. General Cigar
Company*, Inc., 547 U.S. 1205 (2006). The district court
then issued an order dismissing all remaining claims.
*Empresa Cubana Del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399
(SDNY May 15, 2006).

A later proceeding in the federal action requires
brief mention. In 2006, respondent moved to amend the
district court's final order of dismissal to include an
instruction to the Commissioner of the USPTO to dismiss
this cancellation proceeding and to abandon petitioner's
pending application for the mark COHIBA. The district
court denied respondent's motion to amend. *Empresa Cubano
Del Tabaco dba Cubatabco v. Culbro Corporation and General
Cigar Co.*, 478 F. Supp.2d 513 (SDNY 2007). On appeal, the
Second Circuit affirmed, finding that respondent's request
was based on an estoppel theory. *Empresa Cubano Del Tabaco
dba Cubatabco v. Culbro Corporation, General Cigar Co.,
Inc., and General Cigar Holdings, Inc.*, 541 F.3d 476, 88
USPQ2d 1125, 1128 (2d Cir. 2008). Specifically, the Second
Circuit stated that "we see no reason why it was an abuse

10

Cancellation No. 92025859

of discretion for the district court simply to tell [respondent] to raise its estoppel claim before the PTO and let the agency decide, subject to review by the Federal Circuit, what preclusive effect should be given to our decision in *Empresa V*, if any." 88 USPQ2d at 1128.

## Respondent's Motion for Summary Judgment

We initially turn to respondent's motion for summary judgment, more specifically, the portion grounded on petitioner's lack of standing. Summary judgment is an appropriate method of disposing of cases in which there is no genuine dispute of material fact, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of demonstrating the absence of any genuine dispute of material fact. *See Celotex Corp. V. Catrett*, 477 U.S. 317, 322-324 (1986). The evidence must be viewed in a light most favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993). If the party moving for summary judgment carries its initial burden, and the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it would have the burden of proof at trial, judgment as a

Cancellation No. 92025859

matter of law may be entered in favor of the moving party. *See* Fed. R. Civ. P. 56(c); *Fram Trak Industries Inc. v. WireTracks LLC*, 77 USPQ2d 2000, 2004 (TTAB 2006) (citing *Celotex Corp, supra*).

Standing is a threshold issue that must be proven by a plaintiff in every *inter partes* case. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999) and *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). Therefore, we turn first to the question of whether respondent has shown that there is no genuine dispute of material fact as to petitioner's lack of standing to bring this cancellation proceeding.

The purpose of the standing requirement, which is directed solely to the interest of the plaintiff, is to prevent litigation when there is no justiciable controversy between the parties. *Lipton Industries, Inc.,* 213 USPQ at 189. In the case of a petition to cancel, the standing requirement of a plaintiff has its statutory basis in Section 14 of the Act which provides that "any person who believes he is or will be damaged . . . by the registration of a mark on the principal register . . ." may file a petition to cancel.

With regard to petitioner's asserted claims, petitioner, at trial, would need to show that it has a

12

protectible commercial interest in the COHIBA mark or trade name, in addition to its belief that it would be damaged by respondent's COHIBA registrations, to establish standing. *Chemical New York Corp. v. Conmar Form Systems, Inc.*, 1 USPQ2d 1139, 1142 (TTAB 1986).

In support of its motion for summary judgment, respondent contends that since the Second Circuit determined that the CACR prohibited petitioner from acquiring any property interest in the COHIBA mark in the United States at any time, by any means, including by operation of law, and under any legal theory, including the "famous marks" doctrine, international conventions, or an alleged risk of public confusion between the parties' respective marks, petitioner lacks standing to maintain this cancellation proceeding. In other words, respondent essentially maintains that since petitioner is legally prohibited from selling its cigars under the COHIBA mark in the United States or acquiring any interest in the COHIBA mark in the United States, it does not have the legitimate commercial interest required to confer standing to maintain this cancellation proceeding.

In response, petitioner argues that the Board has consistently held that standing is established when a plaintiff's pleaded pending application has been refused

Cancellation No. 92025859

registration based on the defendant's registration.  In

view thereof, petitioner contends that since its pleaded

pending application for the mark COHIBA has been refused

registration based on respondent's existing COHIBA

registrations, standing is conferred upon petitioner to

bring this cancellation proceeding.

We agree with respondent.  While we recognize that

standing is generally conferred on a plaintiff whose

pleaded pending application has been refused registration

under Section 2(d) of the Lanham Act based on defendant's

subject registration, *see, e.g., Great Seats Ltd. v. Great*

*Seats, Inc.*, 84 USPQ2d 1235, 1237 (TTAB 2007); *Cerveceria*

*Modelo S.A. de C.V. v. R.B. Marco & Sons, Inc.*, 55 USPQ2d

1298, 1299 (TTAB 2000); *The Hartwell Co. v. Shane*, 17

USPQ2d 1569, 1570 (TTAB 1990), petitioner, in this

instance, cannot avail itself of such circumstances as a

basis for its standing to pursue this case.  This derives

from a binding, final federal court judgment determining

that (1) petitioner was by law barred from acquiring any

property interest in the mark COHIBA in the United States

during the period between the abandonment of respondent's

earlier registration and the filing date of the

application resulting in the later registration, because

the CACR does not contemplate that petitioner could have

14

Cancellation No. 92025859

acquired property rights in COHIBA through advertising
without use in the United States or based on reputation
alone, (2) respondent has the full panel of property
rights in the COHIBA mark, including the right to exclude
or limit others seeking to use the mark in the United
States, (3) respondent's legal right to the COHIBA mark
has been established as against petitioner, and (4)
respondent has a right to use the COHIBA mark in the
United States because it owns the mark in the United
States.  In view of the foregoing, we find that this case
is controlled by the Board's established precedents, which
hold that where a previous final judgment determines that
a party does not own a property interest in a mark, the
party lacks standing to challenge another's registration
of the same mark.  *See Stephen Slesinger, Inc. v. Disney
Enters., Inc.*, 98 USPQ2d 1890, 1895 n.15 (TTAB 2011); *Gal
v. Israel Military Indus. Of the Ministry of Def. Of the
State of Israel*, 230 USPQ 669, 674 (TTAB 1986), *aff'd*, 824
F.2d 980 (Fed. Cir. 1987).

Accordingly, we find that, in light of the Second
Circuit's binding decision, there is no genuine dispute of
material fact that petitioner lacks a legitimate
commercial interest in the COHIBA mark in the United
States and that, as a result, its belief in damage

15

Cancellation No. 92025859

resulting from an alleged likelihood of confusion under the Trademark Act or any international conventions between its asserted mark and respondent's mark, or under any other legal theory, is unfounded.

As a result, petitioner, as a matter of law, has no standing to maintain this proceeding and, therefore, respondent is entitled to judgment. *See* Fed. R. Civ. P. 56(a). *See also Coup v. Vornado Inc.*, 9 USPQ2d 1824 (TTAB 1988) (petitioner's failure to prove standing warrants grant of summary judgment for respondent).

In view of our finding on the threshold issue of standing, we need not reach the merits of respondent's second ground for summary judgment, i.e., that petitioner's claims are precluded by the application of the doctrines of *res judicata* and collateral estoppel. Furthermore, in light of our decision herein, petitioner's motion to use testimony from the civil action in opposition to respondent's motion for summary judgment is deemed moot and will be given no further consideration.

Accordingly, respondent's motion for summary judgment is granted on the basis of lack of standing; judgment is entered against petitioner based on its lack of standing; and the petition to cancel is dismissed with prejudice. As a further consequence thereof, we also do not address

Cancellation No. 92025859

the question whether respondent's Registration No. 1147309

must be cancelled based on the ruling of the district

court that respondent abandoned the mark in that

registration.  *See* Section 37 of the Trademark Act, 15

U.S.C. § 1119 and TMEP § 1610 (October 2012).

# United States Court of Appeals
## for the Federal Circuit

## CERTIFICATE OF SERVICE

EMPRESA CUBANA DEL TABACO v. GENERAL CIGAR CO., INC., No. 2013-1465

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by RABINOWTIZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C., Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **September 20, 2013**, Counsel for Appellant has authorized me to electronically file the foregoing **Brief for Appellant Empresa Cubana Del Tabaco** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Andrew L. Deutsch
DLA PIPER LLP US
1251 Avenue of the Americas
New York, NY 10020
*Attorney for Appellee*

Upon acceptance by the Court of the e-filed document, six paper copies will filed with the Court, via Federal Express, within the time provided in the Court's rules.

/s/ Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  x    The brief contains ___13,931_____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   x    The brief has been prepared in a proportionally spaced typeface using _MS Word 2002 _in a 14  point times new roman font or

_____ The brief has been prepared in a monospaced typeface using MS Word 2002 _in a ___ characters per inch_____ font.

By: ___/David B. Goldstein/_____
        DAVID B. GOLDSTEIN
        MICHAEL KRINSKY
        RABINOWITZ, BOUDIN,
          STANDARD, KRINSKY &
          LIEBERMAN, P.C.